JOSEPH MOODY, Respondent, *vs.* GEORGE W. RATHBURN, Appellant.

## APPEAL FROM THE DISTRICT COURT OF SCOTT COUNTY.

R., the Defendant, and the Belle Plaine Company, entered into a contract for the construction of certain mills and other improvements, and therein provided for operating the mills after completion, on joint account, each party furnishing the mills and sharing the profits equally with the other, except that said company guaranteed that the Defendant's share of the profits should equal ten per cent. per annum on his investment.    Under this agreement a part only of the mills contemplated were erected by the parties, but not with partnership funds, nor were they used by them for partnership purposes.    Before even these were completed they made a new agreement, by which the Defendant's services were given, and his interest in the mills leased to the other party for a certain term, and for a specified sum.    Prior to the expiration of this term, the said company, being insolvent, made an assignment for the benefit of creditors to I., who, by a new agreement, operated the mills jointly with the Defendant, for a time, and then assigned his interest therein to M., the Plaintiff, who run the mills with the Defendant, for a few months, but on terms altogether different from those of the original agreement.    In the mean time the Defendant and the said company submitted all their matters of difference arising out of their several contracts, to arbitrators, who awarded that the interest of the company in the property was $16,000, and that of the Defendant was $8000, and that all claims for damages, etc., were balanced as between the parties thereto, at the date of the award, which was subsequent to the assignment to I.    *Held* in an action by M. for an accounting and for a partition or sale of the property, that the Defendant and said company were tenants in common of the mills, but not partners; that the mills could not as between those parties be treated as personal property; that the partnership, in operating the mills after completion, contemplated by the original agreement, never took effect, the agreement therefor being first postponed by the lease, and then wholly dissolved by the assignment for the benefit of creditors before the lease expired; that the award was binding upon the parties; that the said company was released thereby from all obligation to make further improvements under the original contract; that as there was nothing due the Defendant at the date of the award, there was no foundation for a lien on the property assigned; that it could not be affected in the hands of the assignee by the subsequent conduct of the assignor; that the successor in interest was not bound to complete the company's contract by erecting all the mills therein provided for, nor obliged to accept of the Defendant as a partner in running the mills already erected, upon the terms specified in said contract; and that the Defendant is not entitled to the exclusive possession under the original contract, nor first to receive out of the proceeds of the property if sold, the amount at which his interest therein was valued, with interest from the date of the award.    *Held also*, that the facts justified the Court below in adjudging the property to be sold and the proceeds brought into Court.

(The substance of the thirty-five "Points" made by the Appellant in this cause, appears from the opinion of the Court.)

Points and Authorities for Respondent.

I.—The Defendant's answer does not contain any defence to the demand of judgment or decree for partition or sale contained in the complaint. The Defendant admits the title precisely as it is stated in the complaint, but alleges that the title is "subject to the conditions, provisions and contract" in the answer set forth. The contract on which all the alleged conditions and provisions rest, does not reach, or in any manner attach to, or constitute a charge or lien upon the premises.

1. Because the contract is by parol, without seal. It is not a covenant, and cannot, for that reason, attach to the title and "run with the land."

2. Because the contract is wholly executory of things to be done, of buildings, &c., to be erected. It does not create or convey, or pretend to create or convey any estate whatever. Even the exact location was undetermined. And the contract does not pretend to bind assigns, but is confined to and affects only the parties to it personally. Had it been a covenant, it would not have attached to the title and so "run with the land," as to affect or be obligatory upon the assigns of either party. *Spencer's case,* 5 *Coke R.,* 16; *Smith's Lead. Cases,* 115, [22]; *Allen vs. Culver,* 3 *Denio R.,* 284; *Norman vs. Wells,* 17 *Wend. R.,* 136; *Tallman vs. Coffin,* 4 *Coms. R.,* 134; *Hurd vs. Curtis,* 16 *Pick. R.,* 459; *Thompson vs. Rose,* 8 *Cow. R.,* 266.

3. Because the submission to, and award of, the arbitrators in effect, completely cancelled the said contract, as they, by the terms and effect of the submission, had the right and power to do. They determined that the property was owned by the parties in the ratio or proportion of $8,000 by Defendant, and $16,000 by the Plaintiff's grantor, and that each party should execute to the other a full and sufficient release, under seal, of all demands, claims, rights and damages of every name and nature whatsoever, and that the award should be a final and full settlement between the parties, and also that either party

might forthwith apply for a receiver. This part of the award controls its effect on the contract and overrides and neutralizes whatever else there is in the award inconsistent with it, and the Defendant's release pursuant to the award, is a perfect bar to all claims which he can make founded on that contract.

II.—The Defendant, by his contract with Ingersoll, dated March 8, 1859, admits the title as alleged in the complaint, and agreed upon new and other terms for the use of the property, wholly inconsistent with the terms of the contract under which he now claims. He thereby waived and abrogated the contract under which he now claims,—ignored it and proceeded to agree and act with Ingersoll as if it was at an end, as it really was.

III.—There is not any misjoinder of actions in this case. In a bill for partition a party may ask for an account of injuries to the property, and of the rents and profits. Such is the general rule in equity, but if it was not, our statute allows it. *Comp. Stat.*, 543, *ch.* 60, *sec.* (87.)

But that objection is not taken in the Defendant's answer, nor was it raised upon the hearing before the Referee. It is too late for the Defendant to raise it now here.

IV.—There is no defect of parties in the case. The Defendant admits the title as the Plaintiff alleges it, and it does not appear that any one else has any interest in it, as an obstacle in the way of a decree. Nor is the inchoate right of dower possessed by the wives of the parties (if any they have) any obstacle in the way of a decree. The statute provides the means of protecting their rights, so that they are not necessary parties, and they are so protected by the decree. *Com. Stat.*, 602, *ch.* 65, *sec.* 36, 37. This objection also comes too late.

V.—The Defendant has not any right in the law to question or intermeddle with the trust in Ingersoll, through whom the Plaintiff derives title, nor with the execution of such trust.

1. Because the Defendant admits that the title is correctly alleged in the complaint, and he is estopped to deny it in this action.

2. Because the Defendant is not a beneficiary of the said trust. He has not any interest whatever in the said trust fund. The contract, award and release pleaded by him and found by the referee show and establish that.

Geo. Bradley, and Smith & Gilman, Counsel for Appellant.

A. G. Chatfield, Counsel for Respondent.

*By the Court*—Emmett, C. J.—The Plaintiff alleges, in his complaint, that he and the Defendant own and possess, as tenants in common, certain lands in the county of Scott, together with the mills and improvements thereon; that his share or interest in said property is the equal undivided two-thirds, and that of the Defendant the undivided one-third thereof; that while said parties were using said property, and dividing the expenses and profits according to their respective interests aforesaid, the Defendant took sole possession thereof to the exclusion of the Plaintiff, and has since been in the sole receipt and enjoyment of the earnings and profits of said mills; that he, Plaintiff, has expended large sums in repairs and machinery for said mills; and that the property cannot be divided without injury thereto. He therefore asks that the parties respectively be made to account, and that the property be sold and the proceeds appropriated in a specified manner, under the direction of the Court. He further asks, for reasons alleged, that an injunction may issue restraining the Defendant from further intermeddling with the property, and for the appointment of a receiver.

To this the Defendant answers, admitting that the premises are held by the parties in the manner stated in the complaint, and that their interests respectively are as therein specified. He also admits the joint occupation of the mills and premises, but denies that the expenses and profits were to be shared in proportion to their respective interest in the mills. He denies also that he has ever taken control of the mills to the exclusion of the Plaintiff therefrom, or from a participation in the profits. He further denies that the Plaintiff has expended any moneys, or that he, Defendant, has received

moneys which he has not accounted for, and claims that there is due to him for moneys expended and for services, the sum of $250.

The Defendant then sets out a contract, dated June 23, 1857, made between him and the Belle Plaine Company, for the erection and construction of said mills, and for running and operating the same after completion, which he avers that he kept on his part, but which the said company violated in certain particulars, and then alleges that he took possession of said mills under said contract, and used and occupied them until sometime in August, 1858, when disputes and differences having arisen between him and said company, they were referred to arbitrators for settlement; and that said arbitrators afterwards awarded that he was entitled to one-third of said property; and had the right to take possession of the mills, and operate the same under said contract of June 23, 1857.

He further alleges that said company, having become insolvent, assigned their interest in such property to D. W. Ingersoll, for the benefit of creditors, by deed dated December 31, 1858, which said deed was expressly made subject to liens and rights under existing contracts. And that said Ingersoll, on the 10th day of September, 1859, assigned or quit claimed his interest therein to the Plaintiff, in payment of a debt then due from said company to the Plaintiff; and that the Plaintiff had at the time due notice of the contract of June 23, 1857, and of the award made by the arbitrators as aforesaid.

The Defendant further alleges that the Plaintiff has sold divers portions of machinery and other property belonging to said mills, and has appropriated the proceeds thereof to his own use. That he has taken exclusive possession of said mills and appurtenances, and ejected the Defendant therefrom, and thereupon also took possession of and appropriated a large amount of grain and other property belonging to him and the Defendant. He also alleges that said mill property, described in the complaint, cannot be divided without injury.

In conclusion he asks that the Plaintiff be made to account; and that the mills may be restored to him, the Defendant, and that he be allowed to operate the same under the contract of June 23, 1857.

It is unnecessary to follow the pleadings further. Enough has been stated to show that both parties admit that they are in possession of the property as tenants in common.; that the Plaintiff owns two undivided thirds, and the Defendant one undivided third thereof; and that said property cannot be divided without prejudice to the owners, and each party demands an accounting.

But while the Plaintiff asks that their joint occupancy of the property should be terminated, and the property sold and the proceeds divided in proportion to their several interests, the Defendant insists on the right to continue operating the mills upon the contract of June 23, 1857, and the award, and on the right to retain the Plaintiff as a partner, even without his consent.

Let us examine, somewhat, into the facts upon which the Defendant founds so extraordinary a proposition.

It appears from the report of the referee, to whom all the issues were submitted, that the Defendant and the Belle Plaine Company, by the written contract aforesaid, of June 23, 1857, agreed to construct and put in operation mills of a certain description, each party furnishing machinery, materials and money therefor, in the manner therein specified; and that after the mills should be completed, the Defendant should run and operate them on joint account, each party furnishing one-half of the funds necessary, and receiving one-half the profits—the Company, however, guaranteeing that the profits thus coming to the Defendant should equal *ten per cent. per annum* on the amount by him invested, exclusive of his labor.

It further appears that under this agreement, the parties built the flouring mills provided for, and described in the complaint, but that just before they were completed, to wit, on the 19th of December, 1857, they made a new agreement in writing, by which the Defendant agreed to give to said Company the exclusive use and control of said mills, and also his personal services, from the date thereof until the first day of January, 1859, for the agreed sum of $1,200, payable in monthly installments of $100 each. It was also thereby agreed that the old contract, except as therein modified,

should stand ; and that all matters of difference between the parties were settled ; and thereupon said Company conveyed to said Defendant the undivided one-half of the lands, on which said mills are situated, and appurtenant thereto, declaring in the conveyance, however, that it should not afford any evidence of the respective rights and interests of the parties to the mills themselves.   Under this last agreement, the said Company operated said mills, until, other differences and disputes having arisen between the parties thereto, they, in pursuance of said agreement, and of the agreement of June 23, 1857, referred the w ole matter to arbitrators, by an agreement of submission dated August 6th, 1858, and an agreement supplemental thereto dated January 1, 1859.

It further appears that said arbitrators afterwards, on the 3d day of February, 1859, awarded that the interest of said parties in said flouring mill, was as follows, to wit: that of said Company was $16,000, and that of the Defendant was $8,000.   And that their interests in the other property were in the same proportion.   They also found and awarded that the parties were restored to their rights respectively under the contract of June 23, 1857, and that the Defendant should go into possession of the mills under said contract, according to his interest, as in said award provided.   And they further found and awarded that the accounts, claims and demands of the parties respectively were mutually balanced; that each should execute to the other a full and sufficient release of all claims, demands, rights and damages, of every kind and description; and that said award should be a final and full settlement between the parties.   And they also provided that either party might apply for the appointment of a receiver.

It further appears from the report of the referee, that before the expiration of the contract of lease, dated December 19, 1857, to wit, on the 31st day of December, 1858, the said Company, being insolvent, assigned all their interest in said property to D. W. Ingersoll, for the benfit of creditors, subject, however, to all liens thereon, and to the rights of parties under existing contracts.   That said Ingersoll and the Defendant afterwards, on the 8th day of March, 1859, made a written agreement, reciting their respective interests in the prop-

erty, as determined by the award aforesaid, by which it was agreed that they should run said mills on joint account, each having half the profits ; and that Defendant was to have for his personal services in running the same, (and to be considered as part of the expenses), at the rate of three hundred dollars per annum, from the date of said award, until the first day of October next ensuing ; and thereafter such compensation as might be agreed upon by the parties.

It further appears that said Ingersoll afterwards, on the 10th of September, 1859, assigned all of his interest in said property to the Plaintiff, in payment of a debt due to the Plaintiff from said Company ; and that the Plaintiff thereupon entered into possession with the Defendant, and thereafter operated the said mills with the Defendant jointly, sharing the expenses and profits *in proportion to their respective interests in the mills, etc.*, until the 18th day of January, 1860, [about the date of the commencement of this action], when he took sole possession of the mills and excluded the Defendant therefrom.

The referee also finds that, at the time the Plaintiff purchased said property of said Ingersoll, he had notice of said contract of June 23, 1857, and of said award of February 3, 1859. He also states the account, between the Plaintiff and Defendant, since the Plaintiff acquired an interest in said mills, including all expenses, receipts and profits, and the value of the Defendant's labor, and of· the property sold or appropriated by either party ; and finds that the Plaintiff is indebted thereon to the Defendant in the sum of $666.24.

These are in substance the material facts found by the referee.

As conclusions of law he finds : That the award of February 3, 1859, was binding upon the parties thereto and their assigns ;—

That the same was a full settlement of all claims for damages, by either party, arising under the agreements of June 23, 1857, and December 19, 1857, and that said Belle Plaine Company were thereby released from all further obligation under said contracts, to erect and put in operation the other mills or machinery mentioned in the original contract, but not yet erected ;—

Moody v. Rathburn.

That the terms upon which said flouring mills were to be run, under said award, were subsequently modified by the agreement between Ingersoll and Defendant, of March 8, 1859 ;—

That the interest of the Plaintiff is free and clear of all rights or equities of the Defendant, under the contract of June 23, 1857 ;—

That the Defendant's interest in the property is not permanently fixed at $8,000, nor is he entitled on a partition to that sum, with interest at ten per cent. per annum from the date of the award ;—

That the Defendant is not entitled to the exclusive control of the mills, nor to one-half the profits thereof ;—

And that the property described in the complaint should be sold, etc.

Upon the filing of this report, the Court adjudged that the property be sold by a referee appointed for the purpose, and the proceeds of the sale brought into Court ; and thereupon the Defendant appealed from said judgment.

We have perused again and again the voluminous record sent up in this case, and have carefully examined the multitude of points made by the Defendant, but without being able to find anything of which he ought seriously to complain.

We cannot agree with him in the position that the contract of June 23, 1857, made him and the Belle Plaine Company partners in the mills themselves ; although it provided for a partnership in running them after they were completed. The real estate was not purchased nor were the mills built with partnership funds ; nor were either ever used, by the parties to the original contract, for partnership purposes. But even had they been thus used, they would not be considered as having lost their character as real estate, unless there was an agreement to that effect, or it became necessary so to regard them for the protection of creditors. The erection and construction of the mills was the main object of the contract, and were preliminary to and quite distinct from the business of operating them afterwards. And so we think the parties themselves considered it ; for we find that before the mills

were ready for operation, they made a new agreement for leasing the Defendant's interest, and giving him a certain salary, thereby postponing the contemplated partnership dur· ing the continuance of the new agreement. This was wholly inconsistent with the idea of an existing partnership in the mills themselves, and it seems to us would of itself be a dissolution, had such a partnership existed. We may also, in this connection, refer to the fact that the Company at the time of making this new agreement of December 19, 1857, conveyed to the Defendant an undivided interest in this real estate,—a proceeding quite unnecessary if it were considered by the parties as belonging to the partnership property.

But again, the contemplated partnership as to *running* the mills was never consummated; for before the expiration of the contract of December 19, 1857, (by which it was postponed to January 1, 1859,) the Company made an assignment for the benefit of creditors; and this of itself put a stop upon the future partnership of the parties in operating the mills; and would also have worked a dissolution of any partnership as to the real estate, had any such really existed. *Bissett on Law of Partnership*, 84, *and cases cited.* It is plain, therefore, (all partnership between the Defendant and the Belle Plaine Company being dissolved at this time), that the Defendant can enforce no rights, against the successor in interest, or assignee of said Company, that could not be enforced against the Company itself; and we find, by reference to the report, that by the award of the arbitrators, (which the Defendant insists shall be enforced), the accounts, claims and demands of the parties of every kind and description were mutually balanced and settled.

Up to the time of the award, then, the Defendant had no unsettled claim or equities against the Company.

But, says the Defendant, the original contract, by the terms of the award, remained in full force, and I am entitled to damages for the neglect of the Company to comply with its terms *since* the award. We hold, with the referee, that said Company was released by this settlement from all obligation to erect the saw mill, and other machinery specified in said contract of June 23, 1857, just as they would have been re-

leased, had the Defendant brought an action to recover on the whole contract, and it had resulted in a judgment similar to the award. Damages for a breach of the contract in not erecting the saw mill, and other improvements provided for by the contract, could be recovered but once, and as the Company had up to that time failed to make such other improvements, there is every reason to believe that the damage resulting to the Defendant from such failure, was included in the settlement. The arbitrators, it is true, declare that the original contract "is in full force, and that the Defendant should go into possession of the flouring mills, agreeably to the terms of said contract," but such declaration of the arbitrators' opinion of the law is not necessarily binding, nor will it bear the construction claimed by the Defendant; as it is further qualified by the declarations that the possession, which the Defendant may take of said mills, shall be "according to his interests, as in said award provided," (which we find to be one undivided third part), and that "each party was at liberty to apply for the appointment of a receiver." These latter qualifications are hardly consistent with the right of the Plaintiff to the exclusive possession of the mills for operation on joint account; or his right still to insist on the Company erecting all the other improvements contemplated by the original contract.

But let us suppose that the Defendant had this right under the award; and still it does not follow that it can continue forever; nor that any damage which he may sustain by reason of the Company refusing to proceed under it, can be made a lien upon the premises belonging to the individual partners as tenants in common. The effect of the award is to ascertain and fix the interest of each in the mills and other property; but it does not find that the mills were partnership property, nor built with partnership funds, nor used for partnership purposes, nor any fact, indeed, from which a partnership therein could be legally inferred for any purpose. The legal conclusion, therefore, is that the Defendant and the Belle Plaine Company were tenants in common of the property mentioned in the award. And as nothing was due from either party to the other, at the date of the award, it follows

that the interest of either could be assigned, without prejudice to the assignee, there being nothing to constitute a lien thereon. And if the parties have a right to assign their interests in the property thus held in common, and there is no lien thereon at the time of the assignment, it is difficult to see how the interest thus assigned can be affected by the failure of the assignor to complete improvements subsequently, when he has no longer any control over the property. If any damages can be due for such failure, they constitute only a personal claim against the delinquent party.

But again, the interest of the Belle Plaine Company was in fact assigned more than a month before the date of the award; consequently the assignee's title accrued prior to the time when the Defendant dates his damages, unless he be permitted to go behind the settlement made by the arbitrators; but this we have endeavored to show cannot be allowed.

How, then, does the matter stand in relation to the dealings of the Defendant with the Company's immediate assignee, Mr. Ingersoll?

The Defendant does not claim that anything is due to him from Ingersoll on the agreement of March 8th, 1859. This agreement recognizes and adopts the award before mentioned, and is a contract for a partnership in running the mills. It was without limitation as to time, and therefore either party was at liberty to terminate the partnership at pleasure. And however much one partner may have become indebted to the other, there would be no lien therefor on the mills; for they were not partnership property; nor could the claim of any purchaser be prejudiced thereby, unless, perhaps, the purchase was made in violation of the statute of frauds.

We next come to the transactions between the Plaintiff himself and the Defendant; and of these the referee makes a very full report, finding a balance due to the Defendant, on a statement of all the accounts between them, and directing that it be paid out of the proceeds of the sale of the mills. But as this is beneficial to the Defendant, we cannot see that he has just cause of complaint as to this particular finding.

We have thus endeavored to trace the claim of the Defendant for damages through its various stages, and have

Moody v. Rathburn.

found that all matters of difference arising out of the contract of June 23, 1857, were settled by the parties thereto, by the contract of December 19, 1857.   That in like manner all matters of difference arising out of both said contracts, prior to February 3, 1859, were fully settled and adjusted by the award of that date.   That just prior to said last named settlement, and before any further cause of action could have accrued to the Defendant, one of the parties to said agreements made an assignment of their interest in the property sought to be affected by this action, thereby dissolving all connection with said property.   That if any cause of action has, since said award, arisen to the Defendant, out of said contracts with the Belle Plaine Company, it does not affect the property previously assigned to Ingersoll.   That the Defendant makes no claim that any indebtedness has arisen against Ingersoll, the immediate assignee of the party with whom he contracted.   And that all claims against the Plaintiff, who is the assignee of said Ingersoll, accruing since he acquired an interest in the property, have been adjusted and allowed by the referee.

We have been at somewhat of a loss to know what there is in the judgment appealed from, of which the Defendant complains.   He admits the interest of the Plaintiff, as set forth in the complaint, and also that the property cannot be partitioned, without injury to the owners ; and, as it is evident that the parties cannot further satisfactorily conduct the business on partnership or joint account, there cannot be reasonable ground for objecting to the sale of the property, and division of the proceeds according to the respective rights of the parties.   And this in fact is all that is effected by the judgment.   The property is simply ordered to be sold and the proceeds brought into Court, to be afterwards distributed according to the equities of those interested therein.   The decree does not, as yet, determine what these respective interests are.

We have, however, carefully examined and considered each of the Defendant's thirty-five elaboratly prepared points ; but cannot take them up in detail.   With the exception of the first two, which are directed to mere questions of practice,

vol vii.—14

(and which we hold could not, if tenable, avail the Defendant at this stage of the case,) the points are all directed towards establishing, or grow out of the following propositions, to wit:

That the Belle Plaine Company and the Defendant were partners in the building of the mills, etc., under the contract of June 23, 1857.

That the real property described in the complaint was partnership property, and should be treated in this action as personalty.

That the Defendant has a claim for damages against his co-partners, the Belle Plaine Company, arising out of their failure to erect a saw mill and other improvements, contemplated by his contract with them, which claim is a lien upon all partnership property.

That said contract, and the award thereon, are binding upon the assignee of the said Belle Plaine Company; and that the assignee or his successor in interest is bound to carry out the said contract and award.

That by the terms of said award, the said contract of June 23, 1857, was in full force, and the interest of the Defendant was fixed at $8000.

That by the terms of said contract the Defendant is entitled to the exclusive possession of the mills, and to run them on joint account for half the profits, which are guaranteed to be equal to ten per cent. per annum of his investment.

That the Defendant therefore is entitled to the exclusive possession of the mills, and to operate them under the contract *ad infinitum*, whether the Plaintiff consent or not.

And that in the event of a sale of the property, the Defendant is entitled, out of the proceeds, to the amount of his interest as fixed by said award, to wit, $8,000, and interest thereon at the rate of ten per cent. per annum.

The most of these propositions have already been commented upon above, wherein we endeavored to show,—that the Defendant and the Belle Plaine Company were not in partnership in regard to the mills or real estate on which they are located, and therefore that said mills could not be treated as personal property; also, that whatever claims for damages the Defendant had prior to the assignment of said Company

to Ingersoll, were settled and arranged by the award of February 3, 1859; and that said assignment was a complete dissolution of any partnership that might have existed prior to that time. We endeavored further to make it appear that any partnership which may have existed since that time between the Defendant Ingersoll, or the Plaintiff, has been by virtue of agreements made with said parties, which were entirely distinct from the agreement of June 23, 1857, between the Defendant and the Belle Plaine Company.

If we have been successful in these efforts, the foundation upon which the Defendant has built nearly his whole defence, is substantially removed.

It will scarcely be necessary to say anything further of such of the Defendant's points as are based upon the assumption, that the contract of June 23, 1857, created a partnership between the parties thereto, which was so far indissoluble that an assignee of the Belle Plaine Company's interest in the mills, can enjoy that interest only upon the conditions of completing all the structures provided for by said contract, and of continuing the Defendant as a partner in operating said mills upon the terms originally agreed upon, so long as he might desire to remain a partner in such business. And as to the Defendant's other proposition, that he is entitled first to receive out of the proceeds of the mills, if directed to be sold, the amount at which his interest was fixed by the award of the arbitrators, to wit, $8,000, with interest thereon at ten per cent. per annum, it is sufficient to say that he has no equitable claim to such a preference. The arbitrators doubtless estimated the value of the respective interests of the parties in dollars and cents, for the sole purpose of enabling them to determine the amount invested by the Defendant, so that in the event that the mills were operated thereafter under the old contract, the Defendant's share of the profits, (which it will be remembered was to equal ten per cent. per annum on the amount by him invested) could be readily ascertained. We have seen, however, that the parties never operated the mills under said contract; the Belle Plaine Company having dissolved all connection with the mills, and with the Defendant, whether as partner or otherwise, by their assignment to In-

gersoll, before their contract of leasing expired; consequently there has never been any partnership profits to which the clause referred to could apply. And we have further ascertained that since said assignment to Ingersoll, the mills have been operated under contracts entirely distinct from that of June 23, 1857. Neither party therefore can justly claim any preference over the other in the distribution of the proceeds of the sale which the Court has ordered, so far at least as regards his interest in the property sold.

Judgment affirmed.