THOMAS MAUCK *et al.*

*v.*

ABRAHAM MAUCK.

1. EVIDENCE IN CHANCERY—*of the preservation thereof.* Where a decree in chancery recites that the case was heard upon proofs, and then finds the facts charged in the bill to be true, it will be inferred the facts were found upon the testimony. Such a decree will be sustained, though it does not purport to set out the testimony, and it is not otherwise preserved in the record.

2. PARTNERSHIP — *power of a court of equity to authorize a surviving partner to sell realty owned by the firm, at private sale.* Real estate, purchased and held by a partnership firm for the purposes of the firm, so far partakes of the character of personalty that it is under the control of a court of equity in making a final adjustment of the affairs of the partnership, whether in stating an account between the partners, or in marshaling the assets for the payment of debts. The realty being impressed with this character, as assets of the firm, a court of equity has the power to vest in a surviving partner the discretion to dispose of it at public or private sale.

3. SAME—*whether such power should be exercised.* But such power should be exercised by the court with great caution, and only under circumstances which preclude the probability that fraud or wrong could be perpetrated. In this case the partnership was insolvent, and it became necessary to sell the realty to pay debts. On bill filed by the surviving partner against the representatives of the deceased partner, for a settlement of the partnership, it was considered not improper to authorize the complainant to sell the realty belonging to the firm, at public or private sale, as he might elect, the circumstances suggesting that there could be no motive on his part to abuse the trust.

4. But the court desire to be distinctly understood as refusing to say such a decree could be rightfully rendered in an ordinary case.

WRIT OF ERROR to the Circuit Court of Wabash county; the Hon. SAMUEL S. MARSHALL, Judge, presiding.

The opinion states the case.

Messrs. BELL & GREEN, for the plaintiffs in error.

Mr. SILAS L. BRYAN, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill in chancery, filed in the Wabash circuit court, by defendant in error against plaintiffs in error, for an account and settlement of a partnership between defendant in error and John Mauck, the ancestor of plaintiffs in error. It appears that the partnership was formed by a verbal agreement, about the first of August, 1857, under the style of A. & J. Mauck; that they began business at once, and carried it on until John Mauck died, on the thirteenth of June, 1861, whereby the partnership ceased. The business embraced the buying and selling of real estate, pork, and erecting and operating a flouring mill, etc. There was no settlement of the partnership business, while it was being carried on by the partners. Each partner, in the beginning, advanced $3000, and at the dissolution of the partnership defendant in error had drawn out and there was charged to him $514.35, and John Mauck, in like manner, $616.15. There was owing by the firm at its dissolution, $77,845.30, and there were assets amounting to $63,833. It further appeared, at the hearing, defendant in error had paid all the debts but $33,700.82. There were assets in his hands in debts due the firm, $1,154.02, and in real estate belonging to the firm, three different tracts, found by the court to be worth $14,700. The court also found the firm to be insolvent in the sum of $14,022.30, and the evidence seems to support the finding.

The court below ordered defendant in error to collect the outstanding debts, and to sell the real estate at either public or private sale, for one half in six and the remainder in twelve months, taking bond with security and a mortgage on the premises. If at public sale, a notice was required to be published. Out of the proceeds of the sale he was required first, to pay the costs of the suit, next, the firm debts, and if any balance remained, to pay one half to the administrator of John Mauck, and to retain the other half. On the tenth of November, 1863, he sold the real estate described in the decree,

at private sale, to Jacob Mauck for the sum of $15,000, and to the same purchaser the personal property for $200. He reported the sale, and that he had himself taken the debts due the firm, making the receipts under decree $16,354.02 ; that he had, after the sale, paid out $16,687.09 on the debts of the firm. The court approved this report, and the record is brought to this court and errors are assigned, that the court below erred in rendering the decree without proof of the allegations of the bill, and in decreeing the sale of the real estate at private sale.

As to the first error assigned, it will be observed that the decree states that the cause came on to be heard on the bill, answer of guardian *ad litem,* together with the exhibits and testimony, and the decree *pro confesso* against the adult defendants. It also appears from the decree that all the material facts charged in the bill were found to be true, and from the recital and finding, we must infer that the facts were found to be true, from the testimony, and that there was sufficient evidence heard to sustain the conclusions at which the court arrived. It has been held by this court that where the decree states that a hearing was had upon proofs, and the facts are found by the court in a decree, it will bind minors, unless the decree purports to give the evidence, or refers to evidence in the record, and it is insufficient to warrant the conclusions at which the court has arrived. *Preston* v. *Hodgen,* 50 Ill. 56, and the same rule has been announced in other cases. We must, then, as this decree states that the case was heard on testimony, and does not say that the evidence is in depositions, or is all in the record, presume evidence to warrant the finding was heard, inasmuch as the facts are found by the decree.

We now come to consider the question whether the court had power to license the surviving partner to sell the real estate purchased by the firm, and held jointly by them, at private sale, or if the power is possessed by a court of equity, it was properly exercised in this case. Taking the facts found by the court to be true, as we must, it is apparent that a sale of the realty was necessary and eminently proper, to pay the debts

due from an insolvent firm. Again, the sale was for more than the court found the property to be worth. There is no claim that the surviving partner acted in bad faith, or that there was any sacrifice of the property or a loss to plaintiffs in error.

The question presented is purely one of power in the chancellor to decree such a sale. We have been referred to no authority which denies or questions the power, nor are we aware that any such can be found; and, in the absence of adjudged cases, we must test the act by general principles. Equity has the undoubted right to compel one person to convey land to another, when equity and good conscience require it. Or it may cancel deeds or enjoin the assertion of title. In truth, equity may avail itself of a variety of means or instrumentalities for the purpose of doing complete justice. There are numerous cases in which a court of equity will, in the promotion of justice, either transfer the property to a beneficiary directly, or convert it into money and have it paid to the person entitled to receive it. A strict foreclosure of a mortgage is within the power of the court, although seldom exercised in this country, even when not prohibited by statute. In such a case, it might not be for the best interest of the mortgagor, but that does not prevent its exercise unless it appears that injury would probably ensue to him.

Again, this was firm property, purchased and held as such. This being so, in equity it partakes of the character of personalty, and was, in many respects, free from the incidents of realty. *Nicoll* v. *Ogden*, 29 Ill. 323. Being purchased and held for firm purposes, it partook of the character of personalty to the extent that it was under the control of the chancellor in making a final adjustment of the affairs of the partnership, whether in stating an account between the partners or in marshaling the assets among creditors. Being impressed with the character of partnership assets, we are inclined to hold that the court below might entrust the surviving partner with the discretion of selling the property at public or private sale. But the power even in such cases should not, as a general rule, be conferred,

and when exercised, it should be under such circumstances as preclude the probability that fraud or wrong could be perpetrated, and the court should exercise great caution and vigilance to see that the power has not been abused.   In this case there were two strong motives operating on defendant in error to restrain him from sacrificing the property.   One was his interest in it, and the other the insolvency of the partnership, both of which would operate strongly to prevent a sacrifice.   And he would have been unnatural in his feelings if reckless of the interests of the minor children of his deceased brother.

Inasmuch as he was the surviving partner, and as the real estate was, in equity, firm assets, and as we fail to see that any wrong was done to plaintiffs in error, we will not disturb the decree.   The property sold for its value, and no fraud appears in the record.   But we desire to be distinctly understood as refusing to say that we hold that such a decree could have been rightfully rendered in an ordinary case.   The decree of the court below is affirmed.

*Decree affirmed.*