THE ROBINSON BANK *v.* FRANK O. MILLER *et al.*

and

THOMAS V. LAMPORT *v.* FRANK O. MILLER *et al.*

*Filed at Mt. Vernon November 23, 1894.*

1. PARTNERSHIP—*use of land by firm does not make it firm property.* Mere use of land by a firm in the firm business does not make such land partnership property.

2. SAME—*when land will become firm property.*   Where real estate is bought with partnership funds for partnership purposes, and is applied to partnership uses, or entered and carried in the accounts of the firm as partnership assets, it is deemed, in equity, firm property, wherever the record title may be vested.

3. SAME—*when trust results in favor of firm.*   If real estate is purchased with partnership funds, the party holding the legal title, whether a member of the firm or a stranger, will be regarded as holding it subject to a resulting trust in favor of the firm furnishing the money.

4. SAME—*intention to make land firm property must clearly appear.* Where the intention to convert land into firm property is inferred from circumstances, these must be such as do not admit of any other equally reasonable explanation, and if an agreement is relied upon to that end, the same must be clear and explicit.

5. SAME—*circumstances held insufficient to make real estate firm property.* The fact that three persons, owning undivided individual interests in a tract of land, form a partnership and use the land in the firm business, will not, in the absence of any explicit agreement or of controlling circumstances, render such land firm assets.

6. SAME—*mortgagee without notice protected.* A *bona fide* mortgagee of firm property from one of the partners holding the legal title, without notice of its partnership character, will hold his lien superior to partnership claims.

7. NOTICE—*of partnership interest in land—what is not.* Facts showing a partnership in the milling and grain business, conducted in a mill upon land held by the several parties individually, will not constitute notice of a partnership in such land.

8. MORTGAGE—*when grantee need not pay.* A grantee of land need not pay a mortgage thereon which constituted no part of the consideration of his purchase, and was not made in good faith for a real indebtedness, notwithstanding his deed is expressed to be "subject to incumbrances."

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Crawford county; the Hon. W. C. JONES, Judge, presiding.

The original bill in these consolidated causes was filed by certain persons, doing a banking business as partners under the name of the Robinson Bank, for the purpose of removing the three mortgages hereinafter named as clouds upon the title of Abner P. Woodworth, trustee for said Bank, to four acres of land in Robinson in the county of Crawford. Upon the first trial in the Circuit Court all the mortgages were set aside. Upon appeal to the Appellate Court the decree of the Circuit Court was reversed, and the cause was remanded. The cause was heard a second time in the Circuit Court; and, at the second hearing, the mortgage to Lamport was set aside as fraudulent, and his cross-bill to foreclose the same was dismissed, but the two Emmons mortgages were sustained as valid, and the prayers of the cross-bills and supplemental cross-bills to foreclose the same were granted by the entry of a decree of foreclosure. The second decree

of the Circuit Court has been affirmed by the Appellate
Court, and the present appeal is prosecuted from such
judgment of affirmance.

The two causes here consolidated by agreement in-
volve two appeals. One is the appeal of the Robinson
Bank, which brings up for review the action of the lower
courts in sustaining the Emmons mortgages and refusing
to remove the same as clouds. The other is the appeal
of Thomas V. Lamport, which questions the action of the
lower courts in refusing to sustain his mortgage and in
dismissing his cross-bill. Other questions were involved
and other parties were interested in the hearings hereto-
fore had in the Circuit and Appellate Courts, but, as the
record now stands, the only question presented is, whether
or not the trustee of the Bank holds the title to the land
subject to the lien of said mortgages, or either, or any of
them.

The material facts, which it is necessary to state, are
as follows: Prior to April, 1883, said four acres, upon
which there was a flour mill, were owned, two thirds
thereof by John Newton, and one third thereof by Henry
O. Wilkin. Wilkin sold his one third interest to one Dyer,
who executed a mortgage thereon to secure the purchase
money. Dyer died, and the mortgage so given by him
was foreclosed. His one third interest was sold under the
decree of foreclosure on April 20, 1883, to John S. Em-
mons for $3500.00, and a certificate of sale was issued to
Emmons by the master. By arrangement between Wilkin
and John S. Emmons, the latter gave to the former, in
payment of the purchase money, two notes, one for
$2000.00 secured upon a farm, and the other for $1500.00,
dated April 24, 1883, due on or before April 24, 1884, with
Willis Emmons, a brother of John S., as surety thereon.
Subsequently suit was brought upon this note for $1500.00
and judgment obtained against Willis Emmons, who paid
the whole of the judgment, no part thereof being paid by
John S. Emmons.

A few days after the purchase of the one third interest by John S. Emmons at the master's sale, John Newton sold an undivided one third interest in the four acres, except three fourths of an acre in the north east corner thereof, to the appellant, Frank O. Miller, for $3000.00, and executed a deed therefor to Miller. It would appear from the evidence, that Newton resided upon the three quarters of an acre excepted from Miller's deed. Thereupon Newton, being the owner of an undivided one third of the four acres, and Emmons, being the holder of a master's certificate of sale of an undivided one third of the four acres, and Miller being the owner of an undivided one third of three and one quarter acres of said four acres, formed a partnership under the firm name of Newton, Emmons & Miller to engage in the business of milling, and buying and selling grain. There were no written articles of partnership. The partnership arrangement was oral merely. The business of the firm was done in the mill upon the land. In August, 1883, the firm was indebted to the Robinson Bank in the sum of $5400.00 for advances made to it by the Bank for use in the grain business and to pay for improvements in the mill machinery; and, when the Bank called for payment of this amount, Newton and Miller each paid one third of it, $1800.00, but John S. Emmons gave the Bank his note for $1800.00, dated August 28, 1883, due four months after date with Wiley S. Emmons and William W. Walter, as sureties thereon, the former being his father and the latter his father-in-law. Subsequently the Bank sued and obtained judgment upon this note, and the judgment was paid, one half by Wiley S. Emmons, and one half by Walter, but no part thereof by John S. Emmons.

The firm continued to do business until September 2, 1884, at which time it had become indebted to the Bank in the sum of $21,585.32, and to various other creditors in various amounts. It is conceded that the firm was then insolvent.

Miller had executed a note, dated May 1, 1883, payable on or before September 1, 1884, to the order of said Lamport, his brother-in-law, for the sum of $5500.00 ; On July 22, 1884, he executed a mortgage to secure this note to Lamport upon his undivided one third interest in said mill property, which mortgage was recorded on September 2, 1884. On September 1, 1884, John S. Emmons executed two mortgages on his undivided one third interest in said property, (he having obtained a master's deed), one to Willis Emmons to secure him as surety upon said note for $1500.00, and the other to Wiley S. Emmons and William W. Walter to secure them as sureties upon said note for $1800.00. One of these mortgages was recorded on September 1, 1884, and the other on September 2, 1884. The three mortgages thus described are those which the original bill seeks to remove as clouds. Newton has died since this suit was begun, but the proof tends to show that said mortgages were not made with his knowledge. His one third interest was free of mortgage.

The Bank learned of the making of these mortgages on September 2, 1884. Its officers on that day had an interview with the members of the firm and sought to obtain a deed from them of the mill property, offering $16,000.00 therefor. $16,000.00 was agreed upon as the value of the property, and was the consideration agreed upon for the transfer, and was finally paid therefor, in credits on the firm indebtedness to the Bank. On September 2, 1884, Newton and his wife, and Miller and his wife, executed to Woodworth, as trustee for the Bank, a deed conveying "all of the interest of the grantors" in the four acres, except the three quarters of an acre above mentioned. The consideration expressed in the deed is $5333.00. The deed contains the words : "The grantee takes subject to incumbrances on the interest conveyed." At that time John S. Emmons refused to join in the deed, saying that $16,000.00 was an inadequate consideration. But afterwards on September 4, 1884, John S. Emmons

and his wife executed a quitclaim deed to Woodworth, as such trustee, conveying "one third undivided interest" in the four acres above mentioned. The consideration named in this deed is $5333.33.

On September 3, 1884, Newton and Miller confessed judgment in favor of the Bank for $16,252.32, and on the next day John S. Emmons confessed judgment in the Bank's favor for the same amount. $16,252.32 was the amount of indebtedness remaining due to the Bank after crediting $5333.00, (which was the agreed value of Newton's one third interest and the consideration named in his and Miller's deed to the Bank) upon the total indebtedness of $21,585.32. Execution was at once issued upon these judgments and levied upon certain grain and other personal property belonging to the firm, which was sold by the sheriff on or about November 10, 1884, for $5380.06 ; and the latter amount was credited upon the execution.

The Bank took possession of the mill on or about September 3, 1884, and operated it until it was transferred, during the pendency of this litigation, to Singleton B. Allen, originally a member of the Banking firm, and appointed receiver in this cause. The books of Newton, Emmons & Miller remained in the mill after the Bank took possession, and collections were made on the accounts under the direction of Newton, who had become an employee of the Bank. The books showed accounts due to the firm to the amount of $3348.73. The Bank paid the wife of John S. Emmons $200.00 for signing the deed to Woodworth. On January 14, 1885, it gave credit on its books for $16,000.00 as the consideration of the conveyance to it of the mill property, and on the same day entered, upon the margin of the record of the judgments for $16,252.32 each against Newton and Miller, and Emmons, a receipt, dated back to September 4, 1884, for $10,666.66 credited "on this judgment by balance conveyance of the Eclipse Mills and appurtenances thereunto belonging, and the tract of land on which said mill is situated."

The proof shows that the firm of Newton, Emmons & Miller put new machinery in the mill after the formation of their partnership to the amount of about $11,200.00.

Messrs. CALLAGHAN, JONES & LOWE, for the Robinson Bank, appellant:

The business was all done in the name of the partnership, and the real estate was partnership property, though the title was in the individual members. Story on Partnership, secs. 2, 82, 96; 3 Kent's Com. 24; *Simpson* v. *Leech*, 86 Ill. 286.

The mortgages given by Emmons to secure his individual indebtedness are void as to creditors of the firm. One partner cannot make a valid mortgage of his interest in the partnership property without the knowledge or consent of all the other partners. *Smith* v. *Andrews*, 49 Ill. 28.

It would not change this rule though the money loaned to the partners be used in the partnership business. Story on Partnership, secs. 140, 347; *Lill* v. *Egan*, 89 Ill. 609.

That the real estate and mill property, being partnership property, were primarily liable for the payment of the partnership indebtedness, is a principle of law well settled. *Ladd* v. *Griswold*, 4 Gilm. 25; *Morrison* v. *Kurtz*, 15 Ill. 193; *Rainey* v. *Nance*, 54 id. 29; *Adams* v. *Sturgis*, 55 id. 468; *Nat. Bank* v. *Union Bank*, 94 id. 271; *Bopp* v. *Fox*, 63 id. 540; *Rosenstiel* v. *Gray*, 112 id. 282; *Trowbridge* v. *Cross*, 117 id. 109.

Messrs. PARKER & CROWLEY, for the appellees, and for Thomas V. Lamport, appellant:

The bank was not an innocent purchaser, for it knew of the fact that John S. Emmons was indebted to Wilkin, and hence is not to be protected as if it had no knowledge. *Lochenmeyer* v. *Fogarty*, 112 Ill. 572; *Rice* v. *Rice*, 108 id. 199.

In this case, evidently, the Lamport mortgage was, at the time, deducted from the purchase price, and therefore the law implies a promise on the part of the pur-

chaser to pay the mortgage. *Comstock* v. *Hill*, 37 Ill. 548 ; *Hammer* v. *Johnson*, 44 id. 193 ; *Maher* v. *Lanfrom*, 86 id. 513 ; *Darst* v. *Bates*, 95 id. 493 ; *Sands* v. *Church*, 6 N. Y. 347.

If, from the purchase price, Lamport's mortgage was deducted, then the bank owes the amount so deducted, and an action at law would be and could be maintained to recover same. *Burr* v. *Burr*, 24 N. Y. 178 ; *Trotter* v. *Hengle*, 12 id. 74 ; *Pretney* v. *Farnham*, 27 Wis. 187; *Bolles* v. *Beach*, 22 N. J. Law, 680 ; *Wayn* v. *Terry*, 37 id. 339 ; *Wilson* v. *King*, 23 N. J. Eq. 150 ; *Heed* v. *Freeland*, 30 id. 591; *Lamb* v. *Tucker*, 42 Iowa, 118 ; *Truchell* v. *Means*, 8 Biss. 211; *Jones* v. *Parkes*, 78 Ind. 537; *Flagg* v. *Geltmacher*, 98 Ill. 293 ; *Drury* v. *Holden*, 121 id. 130 ; *Rogers* v. *Herron*, 92 id. 583 ; *Sully* v. *Palmer*, 51 id. 331; *Fowler* v. *Jay*, 62 id. 365 ; *Henderson* v. *Bellew*, 45 id. 322 ; *Essley* v. *Sloane*, 116 id. 391; *Bay* v. *Williams*, 112 id. 91.

If the bank or its counsel made statements or admissions for the purpose of deceiving the parties interested, then the bank is estopped from denying the validity of the mortgages. Warville on Abstracts, p. 40, sec. 7; *Hill* v. *Blackwelder*, 113 Ill. 283 ; 1 Story's Eq. Jur. (10th ed.) secs. 192, 193, 385, 387; *Kinnear* v. *Mackey*, 85 Ill. 96.

The bank having accepted the deed with a condition "subject to incumbrances," waived any preferred right it may have had over the mortgagees. *Mahaney* v. *Mackulren*, 54 Ind. 268.

The purchaser acquired no greater right than the grantors had. Consequently, if Miller and Emmons could not file a bill to set aside the mortgage, the bank could not. Jones on Mortgages, sec. 1202.

The mortgagors cannot set up a defense to their mortgage, claiming it was to defraud creditors, or that the mortgage was to secure usurious interest, etc., and therefore their grantees cannot. Jones on Mortgages, sec. 632.

The grantee succeeds to the estate, and occupies the position of his grantor. He "takes subject to the incumbrances," and his title and possession are no more adverse

to the mortgagee than were the title and possession of the mortgagor. Jones on Mortgages, secs. 1202, 1491; *Medley* v. *Elliott*, 62 Ill. 532; *Waterson* v. *Kirkwood*, 17 Kan. 9.

If the grantee takes the same interest the grantor had, and subject to the same incumbrances, then the bank is estopped to deny the title of the mortgagee acquired by the mortgages. Jones on Mortgages, sec. 1483.

If the court believes, from the evidence, the bank assumed the payment of mortgages as a part of the purchase money, then the bank cannot make any defense that the mortgagor could not make. Jones on Mortgages, sec. 744; *Crawford* v. *Edwards*, 33 Mich. 354; *Miller* v. *Thompson*, 34 id. 10.

When the mortgage debt is a part of the purchase money, although the purchaser has not entered into any agreement to pay it, he is nevertheless bound to protect and indemnify the grantor. Jones on Mortgages, sec. 751, and cases cited.

The acceptance of the deed with the provision that "the grantee takes subject to incumbrances upon the interest conveyed," makes the grantee liable to pay the incumbrance. Jones on Mortgages, sec. 752.

If lands are conveyed to members of a co-partnership, as tenants in common, and one member of the firm mortgages his apparent interest as a tenant in common, the mortgagee is entitled to hold the same. *Hewitt* v. *Rankin*, 41 Iowa, 35.

Mr. JUSTICE MAGRUDER delivered the opinion of the court :

The Robinson Bank, one of the appellants herein, claims that the mill property including the four acres of land upon which the mill was located, was partnership property belonging to the firm of Newton, Emmons & Miller; that, as such, it was first liable to be subjected to the payment of the partnership creditors, including the Bank; that the mortgagees, Lamport, Walter, and Willis

and Wiley S. Emmons, were individual creditors of Miller and John S. Emmons, and only entitled to such surplus as might arise out of the mill property after the payment therefrom of the firm debts.

Whether real estate, upon which a partnership transacts its business, is firm property or the property of the individual members of the firm, is oftentimes a difficult question to determine, and one upon which the authorities are not altogether uniform.

The mere fact of the use of land by a firm does not make it partnership property. (*Goepper* v. *Ginsinger*, 39 Ohio St. 429 ; *Hatchett* v. *Blunton*, 72 Ala. 423). Nor is real estate necessarily the individual property of the members of a firm because the title is held by one member, or by the several members in undivided interests. (1 Bates on Law of Partnership, sec. 280). Whether real estate is partnership or individual property depends largely upon the intention of the partners. That intention may be expressed in the deed conveying the land, or in the articles of partnership ; but when it is not so expressed, the circumstances, usually relied upon to determine the question, are the ownership of the funds paid for the land, the uses to which it is put, and the manner in which it is entered in the accounts upon the books of the firm. (1 Bates on Law of Part. sec. 280 ; 2 Lindley on Part. marg. page 649 ; 17 Am. & Eng. Enc. of Law, page 945, and cases in note).

Where real estate is bought with partnership funds for partnership purposes, and is applied to partnership uses, or entered and carried in the accounts of the firm as a partnership asset, it is deemed to be firm property; and, in such case, it makes no difference, in a court of equity, whether the title is vested in all the partners as tenants in common, or in one of them, or in a stranger. (Parsons on Part.—4 ed.—sec. 265 ; 1 Bates on Law of Part. sec. 281; *Johnson* v. *Clark*, 18 Kans. 157; 17 Am. & Eng. Enc. of Law, page 948, and cases cited). If the real estate is

purchased with partnership funds, the party holding the legal title will be regarded as holding it subject to a resulting trust in favor of the firm furnishing the money. In such case no agreement is necessary; and the statute of frauds has no application. (*Parker* v. *Bowles*, 57 N. H. 491; 1 Bates on Law of Part. sec. 281).

In the case at bar, the land was not purchased with partnership funds. The undivided one third interest bought by John S. Emmons was paid for by him with his own individual money. Miller also paid for the one undivided one third interest, purchased by him, with his individual funds. None of the money of the firm of Newton, Emmons & Miller was contributed towards the purchase of the one third interest held by Newton. Indeed, the proof shows, that the firm of Newton, Emmons & Miller was formed by an oral agreement after Emmons and Miller had bought their interests. Each partner here held the title to an undivided one third part of the property. No entries were made upon the books of the firm, showing that the real estate was treated as firm assets. The evidence, however, does show that the property was bought for the purpose of being used in the milling business, and that, after its purchase, it was used for firm purposes, and that the firm gave its notes to pay for repairs and for placing new machinery in the mill upon the premises. Under these circumstances, was the land partnership property, or the individual property of the partners holding as tenants in common?

It cannot be said, that the land is firm property upon the theory of a resulting trust, because the money of the firm was not used to buy the property. Such a trust might exist in favor of the firm, regarding it as a person, if the partners had taken the legal title, and the firm had advanced the purchase money. The trust must arise at the time of the execution of the conveyance, and when the title vests in the grantee. Such could not have been the case here under the facts stated. (*Van Buskirk* v. *Van-*

*Buskirk*, 148 Ill. 9). In view of the fact, that the land was
bought with individual, and not partnership, funds, and
was conveyed in undivided interests to the several part-
ners, and in the absence of any agreement that it should
be regarded as firm property, does the conduct of the
parties in afterwards forming a partnership, and using
the property for partnership purposes, and repairing and
improving the mill at the expense of the firm, make the
land firm property in a court of equity? A negative an-
swer to this question is found in many of the authorities,
as will be seen by reference to the following : *Alexander* v.
*Kimbro*, 49 Miss. 529 ; *Thenot* v. *Michel*, 28 La. Ann. 107;
*Reynolds* v. *Ruckman*, 35 Mich. 80 ; *Parker* v. *Bowles*, 57 N. H.
491; *Thompson* v. *Bowman*, 6 Wall. 316 ; *Frink* v. *Branch*, 16
Conn. 260 ; *Wheatley's Heirs* v. *Calhoun*, 12 Leigh, 264; *Sikes*
v. *Work*, 6 Gray, 433 ; *Gordon* v. *Gordon*, 49 Mich. 501; *Moody*
v. *Rathburn*, 7 Minn. 89 ; *Paige* v. *Paige*, 71 Iowa, 318; Par-
sons on Part.—4 ed.—sec. 266 ; *Hatchett* v. *Blanton, supra.*
The general doctrine of all these cases is, that a purchase
of the land with partnership funds is necessary to make
it firm property. Parsons in his work on Partnership
(4th ed.) says : "Although it (real estate) be held in the
joint name of two or more persons, if there be no proof
that it was purchased with partnership funds for part-
nership purposes, it will be considered as held by them
as joint tenants, or tenants in common; *   *   *   So,
if not paid for by partnership funds, then it is prob-
ably his property who does pay for it, whatever use he
permits to be made of it." (Secs. 265, 266). In *Hanchett* v.
*Blanton, supra*, the Supreme Court of Alabama say: "Steer-
ing clear of all cases of fraud or of the use by one
partner, without the approbation of his associates, of
partnership funds in the acquisition of real estate, the
two facts must concur to constitute real estate partner-
ship property—acquisition with partnership funds, or on
partnership credit, and for the uses of the partnership."
In *Thompson* v. *Bowman, supra*, the Supreme Court of the

United States say: "In the absence of proof of its pur-
chase with partnership funds for partnership purposes,
real property standing in the names of several persons is
deemed to be held by them as joint tenants, or as tenants
in common." (*Buchan* v. *Sumner*, 2 Barb. Ch. 165).

The theory of some of the cases is, that real estate,
bought with separate and not partnership funds, cannot
be converted into firm property by a verbal agreement
between the partners, because no trust can be created in
lands unless by writing, in view of the statute of frauds,
except such as results by implication of law. (*Parker* v.
*Bowles, supra*).

There are cases which hold, that, even though the
land was originally bought by the several partners with
their individual funds, and deeded to them as tenants in
common, yet it will be regarded in equity as firm prop-
erty where it is improved out of partnership funds for
firm purposes and actually used for such purposes, or
where the firm puts valuable and permanent improve-
ments upon it for firm purposes, and which are essential to
the firm. In some instances the *land* is held to be the prop-
erty of the partners, and the *improvements* to be the prop-
erty of the firm. (1 Bates on Law of Part. secs. 281, 282).
The use of the property is not conclusive of its character
as real estate or personalty, but is only evidence of the
intention of the parties. (Idem. sec. 285). When the in-
tention of the partners to convert the land into firm prop-
erty is inferred from circumstances, the circumstances
must be such as do not admit of any other equally reason-
able and satisfactory explanation. (Parsons on Part. sec.
267). And where it is sought to show a conversion of the
land into personalty by agreement of the partners, such
agreement must be clear and explicit. (17 Am. & Eng.
Enc. of Law, page 954, and cases cited.)

In *Alkire* v. *Kahle*, 123 Ill. 496, land was conveyed dur-
ing the existence of the partnership to "Cato Abbott and
Henry Robinson, composing the firm of Abbott & Rob-

inson," and it was held not to be partnership property, because it was not shown to have been either purchased with partnership funds, or used for partnership purposes; but we do not regard that case as holding that the mere use of the land for partnership purposes constitutes it firm property.  :

In *Mauck* v. *Mauck*, 54 Ill. 281, land which had been bought and held for firm purposes was said to be firm property and to partake of the character of personalty, but in that case a part of the business of the firm was to buy and sell real estate, and, although the land was said to belong to the firm, it does not appear that it was not purchased with partnership funds.

In *Faulds* v. *Yates*, 57 Ill. 416, the land was bought for the use of the partnership, but after the partnership was formed and with the money of two of the partners.

In *Bopp* v. *Fox*, 63 Ill. 540, land, bought by four partners with their individual funds and conveyed to them in their individual names, was held to be partnership property, because, two weeks before the purchase, the four purchasers made, not a mere executory agreement to form a partnership at a future time, but "a present verbal agreement of partnership," and then afterwards bought the land and began the erection of a mill for the purpose of carrying on the milling business as a firm "already formed under the verbal agreement." It was there held, that the essential question was, whether the purchase money "was paid as partnership money for a partnership purpose," and we said: "We consider this was essentially a purchase with partnership funds for partnership purposes."

The weight of authority seems to us to support the position, that, where persons, who afterwards become partners, buy land in their individual names, and with their individual funds, *before* the making of a partnership agreement, the land will be regarded as the individual property of the partners, in the absence of a clear and explicit agreement subsequently entered into by them to

make it firm property, or in the absence of controlling circumstances which indicate an intention to convert it into firm assets. We do not think, that an application of this rule to the facts of the present case shows the real estate here in controversy to be firm property. The testimony proves affirmatively, that there was no agreement, written or verbal, to put the land into the firm as a firm asset, and that it was treated by the parties as individual property. John S. Emmons insured his interest separately. When he gave his note for $1500.00, signed by his brother as surety, in part payment of the purchase money for the land, he promised his brother that he would give him a mortgage on his one third interest, when the master's certificate, issued to him at the sale, should ripen into a deed ; and the mortgage afterwards made was given as soon as the master's deed was obtained. Four months after the purchase, when he borrowed $1800.00 of the Bank upon his note signed by his father and father-in-law as sureties, he stated to the Bank that he intended to mortgage his interest to his sureties to secure them. About this time Newton, Emmons & Miller paid $5400.00 in cash for improving the mill, but this amount was contributed by the partners, not out of partnership funds, but by the contribution of their individual monies, each paying one third. The one third so paid by John S. Emmons was the $1800.00 borrowed on his note. The Bank itself in procuring deeds from the partners in September, 1884, dealt with them as owners of separate interests.

Each member of a partnership has a superior lien on the partnership property for the payment of the firm debts. This equitable lien of the partners is worked out for the benefit of the firm creditors. (*Hapgood* v. *Cornwell*, 48 Ill. 64). Hence, partnership property must be first applied to the payment of partnership debts ; and the true interest of each partner in such property is the balance found to be due to him after the payment of the firm debts

and the settlement of accounts between the partners. (*Bopp* v. *Fox*, *supra*).   In equity, real estate stands on the same footing in this respect as personal property.   (*Alkire* v. *Kahle*, *supra*).   It results, that there can be no dower interest in real estate owned by a partnership, until all the partnership debts are paid, and the partnership accounts are adjusted.   (*Trowbridge* v. *Cross*, 117 Ill. 109).   If the land in controversy was firm property in September, 1884, there were no dower interests at that time in the wives of Newton, Emmons and Miller, and yet their wives were required by the Bank to sign the deeds to its trustee, Woodworth, and one of them was paid $200.00 for her signature.

There is no question about the *bond fide* character of the mortgages to Willis Emmons, and Wiley S. Emmons and W. W. Walter.   They paid the judgments upon the notes of John S. Emmons upon which they were sureties, and those notes were given for borrowed money expended in the purchase and improvement of the mill property. We think those mortgages have been properly sustained as resting upon an undivided one third interest in the land, which must be regarded, under all the circumstances of this case, as the separate property of John S. Emmons.

But even if the interest held by John S. Emmons was firm property, there is nothing to show that the holders of the mortgages thereon had notice, or reasonable ground for believing, that it was firm property.   The record title was in John S. Emmons, and all the circumstances coming to their knowledge, as heretofore stated, were calculated to create the impression that his real interest was that indicated by the record.   Facts showing a partnership in the milling and grain business were not necessarily notice of a partnership in the land.   Now, it is well settled that a *bond fide* purchaser, or mortgagee, of firm property from one of the partners holding the legal title, without notice of its partnership character, will hold it free from partnership claims.   (Parsons on Part.—4 ed,

—secs. 277, 278; 1 Bates on Law of Part, sec. 291; *Dyer* v. *Clark*, 5 Metc. 562; Collyer on Part.—Perkins' ed.—sec. 135).

When a firm and its members are insolvent, and the firm has been dissolved, an equity exists in favor of the creditors of the firm in respect of the lands purchased with partnership funds, which is superior to that of the creditors of the individual partners; but there may be cases where an equal or superior equity may be created in favor of a creditor of an individual member of the firm, as where one has furnished to one of the members the capital upon which the business was commenced. (*Reeves* v. *Ayers*, 38 Ill. 418). By signing the note for $1500.00 as surety, Willis Emmons enabled John S. Emmons to purchase an interest in the mill property, and, if that interest was a partnership asset, he thereby aided in procuring a part of the firm capital.

In addition to what has been said, we think the evidence shows that the officers of the Bank, if they did not actually make an agreement to that effect, gave John S. Emmons to understand that the Bank would protect the mortgages on his interest, if he and his wife would sign the deed to the Bank. The consideration of that deed was just the amount of the two mortgages; and four witnesses swear that one of the officers of the Bank promised to take care of the mortgages. When a person, by his words or conduct, voluntarily causes another to believe in the existence of a certain state of things and induces him to act upon that belief so as to change his previous position, the former will be estopped to aver against the latter a different state of things. (*Casler* v. *Byers*, 129 Ill. 657).

As to the mortgage made by the appellant, Miller, to Lamport, the lower courts have found that that mortgage was not made in good faith, and was not given to secure a *bonâ fide* indebtedness. It is claimed that the note for $5500.00, secured thereby, was given for money

loaned to Miller by his wife and by his brother-in-law, Lamport. It is true, that the fact of the relationship between the parties is no proof of fraud, although it may be a circumstance to excite suspicion. (*Wightman* v. *Hart*, 37 Ill. 123). But we are not satisfied from the evidence, that the money, alleged to have belonged to Mrs. Miller, was not the money of Miller himself. If any funds were loaned to him by Lamport, it is not possible to fix their exact amount separately from those alleged to have been borrowed of Mrs. Miller. The witnesses contradict each other as to amounts, and as to the times and places of payment. There is refusal to answer questions, and failure to explain matters needing explanation. We have examined all the testimony as contained in the original record, and we cannot say that the Circuit Court erred in the conclusion reached by it in regard to this mortgage, or that the Appellate Court has erred in agreeing with the Circuit Court.

It is true that the deed from Miller and Newton to the Bank contains the words "subject to incumbrances," but we think the reference here is to incumbrances, which are made in good faith. The facts about the mortgage were not known when the deed was executed. There is some conflict in the evidence as to whether the parties intended to refer to the Lamport mortgage, or to certain liens claimed to exist in favor of creditors, who had furnished machinery for the mill. But even if the words refer to the Lamport mortgage alone, it is not certain from the testimony that the amount of that mortgage was a part of the consideration for the execution of the deed. The grantee in a deed, who purchases subject to an incumbrance to secure indebtedness, may not be under obligations to pay such indebtedness, if its amount is not included in and does not form a part of the consideration of the conveyance. (*Drury* v. *Holden*, 121 Ill. 130). The amount named as the consideration in the deed was simply the agreed value of Newton's interest, and did not include

any part of this mortgage. The amount of the actual consideration agreed to be paid by the Bank for the deed of Miller's interest, towit: $5333.33, (one third of $16,000.00) was paid by a credit of that amount on the firm indebtedness of $21,585.23, due from Newton, Emmons & Miller to the Bank.

The judgment of the Appellate Court and the decree of the Circuit Court are affirmed.

*Judgment affirmed.*

Mr. JUSTICE PHILLIPS, having heard this case in the Appellate Court, took no part in its decision in this court.