Sigourney *against* Munn and another.

In winding up the concerns of a partnership, after a dissolution, one partner cannot take the partnership stock at a valuation ; but its value must be ascertained, by a conversion of it into money.

And where, after a dissolution of a partnership, one of the late partners abandoned the partnership concerns, refused to divide the stock, and made no reply to the repeated solicitations of the other partner to come to an amicable settlement of their concerns ; where it appeared further, that in this state, among merchants and traders, the customary mode of winding up the concerns of a solvent partnership, after a dissolution, is to divide the stock of goods on hand between the partners, or for one partner to purchase out the other ; that there is no usage, in such cases, to sell the stock on hand at public auction ; and that when this mode of sale has been resorted to, it has been generally attended with a considerable sacrifice or loss with reference to the appraised value ; and where it appeared also, that the partner in whose sole possession such goods were left, in order to render them most saleable, replenished the stock with new and more saleable goods, and so intermingled the old and new goods that it became impracticable for him to keep a separate account of the sales of the old stock—thus to replenish old stocks being generally practised by regular merchants, and this being the only method that can be adopted, with a prospect of making fair sales ; it was held, that these circumstances did not deliver the case from the operation of the general rule, requiring a sale as a criterion of value.

Whatever is sufficient to put a person on enquiry, is considered in equity as conveying notice.

Where *S.,* one of two partners, executed a release deed of land to himself and *M.,* the other partner, for a nominal consideration, " received of *S.* and *M.,* merchants in trade under the firm of *S. & Co.,*" " to be held by them in such proportions as is agreed on between them ;" it was held, that the record of this deed, the singularities of which were calculated to awaken attention, conveyed constructive notice to an incumbrancer under *M.,* that the land was partnership property.

This was a bill in chancery, instituted by *Sigourney,* against *Munn,* who was formerly his partner in trade, and against *Hol-*

*brook,* an incumbrancer under *Munn,* claiming a balance due to
him, as partner, from *Munn,* on the adjustment of the partnership
concerns; and praying that some meet person be appointed to
divide the company property, or that so much of it be sold as
will, on the winding up of the partnership concerns, pay him
such balance, and that all the title which *Munn* ever had in the
real estate of the company, be vested in the plaintiff. The
case, embracing the facts found by a committee, came before
this Court, at the last term in this county; but the finding of
the committee was considered as defective, and for that reason,
their report was not accepted.(*a*)   The subject was referred
again to the same committee, who found the following facts, in
addition to those contained in their former report.

After notice had been given of the dissolution of the part-
nership, in the manner before stated, a conversation was had
between the parties respecting the mode of disposing of the
stock on hand, and particularly, whether it should, or should
not, be sold at auction.   *Munn* objected to that mode, as being
in its consequences ruinous to himself; and *Sigourney* there-
upon agreed with him, that it should not be sold at auction.
*Munn* claimed, that *Sigourney* ought to take the goods, and ac-
count for them *at cost;* but this claim was not acceded to by
*Sigourney.*

On the 14th of *December,* 1825, after the notice of disso-
lution given by *Munn, Sigourney* addressed and delivered a
letter to him, wherein, among other things relating to the part-
nership, he said : " But if, after all, you still prefer to decline this
offer, I do not perceive that any other course is left me, but to
close the business according to the articles of copartnership,
and whatever property may belong to the company on the 1st
of *April* next, either to sell in such way as may be deemed
most prudent, or divide between us according to our respective
interests."   To this no answer was given.   On the 24th of
*April,* 1826, *Sigourney,* with a view to induce *Munn* to act
with him in bringing the business to a close, caused a written
notice to be delivered to him, then residing in *New-York,* in
these words:  " Sir, having completed the inventory of the
stock of merchandize of the late company of *Charles Sigour-
ney & Co.,* which amounts to 26,228 dollars, 16 cents, I hereby
notify you, that I am ready to proceed to make a dividend of
the partnership property, according to the articles of copart-

*Hartford,*
June, 1829.

Sigourney
*v.*
Munn.

(*a*) Vid. *Sigourney* v. *Munn* & al. ante 11. 21.

*Hartford,*
June, 1829.

Sigourney
*v.*
Munn.

nership between us, on your paying one fourth of the late company's debts, and paying, or securing to be paid, to my satisfaction, whatever sums of money may be found due to me, on a settlement of the partnership accounts. [Signed.] *Charles Sigourney.*" This notice was never acknowledged by *Munn ;* nor did he ever offer to comply with its overtures.

The committee found, that in this state, among merchants and traders, the customary mode of winding up the concerns of a solvent partnership, on dissolution, where a stock of goods remains on hand, is, to divide them between the partners ; or, for one to purchase out the other ; that there is no usage, in such cases, to sell the stock on hand at public auction; and that generally, when this mode of sale has been resorted to, it has been attended with a considerable sacrifice or loss, comparing the net proceeds with the appraised value.

After the dissolution, *Sigourney*, being satisfied, that the stock of goods on hand must be taken and disposed of by himself, *Munn* having abandoned them, in order to render them most saleable, replenished the stock, by new and more saleable goods, and so intermixed the old and new goods, that it became impracticable for him to keep a separate account of the sales of the old stock. Thus to replenish old stocks, the committee found generally practised, by old and regular merchants ; and this is the only method that can be adopted, with any prospect of making fair sales. Hence, they could not find the amount of sales from the company stock, since the dissolution. Such sales as could be ascertained, had been made for a less sum than the appraised value ; and the present market value of such of the stock as remains on hand, is below the appraisal. Could the partnership stock be separated from other goods, and sent to auction, there would be, in the opinion of the committee, a great *deficit* in the sales from the appraised value reported.

The whole case was reserved for the advice of this Court as to what decree should be passed.

*Sherman* and *F. Parsons,* for the plaintiff, contended, 1. That whatever might be the general rule, *Munn,* under the circumstances of this case, as disclosed in the second report, could not insist on a sale of the partnership stock as a pre-requisite to an adjustment of the partnership concerns. *Munn* himself objected to a sale at auction ; and *Sigourney* agreed, that this

course should not be taken. *Sigourney* then proposed to *Munn* to sell the stock in such way as they should deem most prudent, or to divide it between them in proportion to their interests. *Munn* made no reply, and did nothing. He refused all assistance; abandoned the concern; and left the state. What was *Sigourney* to do with this property? He alone could not divide it; and he could not sell it, in the state in which *Munn* left it, because in that state, it was unsaleable. To render it saleable, it was necessary to replenish the stock, and intermingle the new goods with the old. This was in fact done; but it produced a new difficulty. In consequence of the intermixture, it became impracticable for *Sigourney* to keep a separate account of the sales of the old stock. Under these circumstances, a valuation by indifferent appraisers, was the only course left, to ascertain the value of the stock. And this course, the committee find, is sanctioned by usage.

2. That *Holbrook*, when he took the mortgage deed from *Munn*, had equitable notice, that the premises were partnership property; and consequently, his title is subject to the partnership accounts. The rule in equity is, that whatever is sufficient to put a party on enquiry, is considered as conveying notice. *Peters* & al. v. *Goodrich*, 3 *Conn. Rep.* 146. From an inspection of the town records, *Holbrook* must have reasonably inferred, that this property did not belong to *Sigourney* and *Munn* as tenants in common, but as partners. Of this the first indication is, that the original conveyance was from the *grantor himself* and another. The 2d indication is, that the consideration was *merely nominal*, viz. "one dollar," not one five thousandth part of the value of the land. The 3d indication is, that the consideration was received of the grantees as "merchants in trade under the firm of *C. Sigourney & Co.*" The 4th indication is, that there is a *reference* on the face of the deed to some *other agreement*. The premises are "to be held by them (the grantees) in such proportion as is agreed on between them." On the whole, it is apparent from the record, that *Sigourney* did not intend to convey land to himself, *as an individual*, for such a conveyance would be inoperative; that the conveyance was to both the grantees, *in the same capacity*; that this capacity was that of *merchants in trade*; that the conveyance was not made on a *sale* of the property; and that the grantees were to hold, not in moieties, as tenants in common would, but in certain proportions specified in an agree-

*Hartford,*
June, 1829.

Sigourney
*v.*
Munn.

ment referred to. What is thus referred to, is part of the deed. *Newl. Contr.* 512. If *Holbrook* had notice in relation to the land conveyed by the first deed, he had equal notice with respect to the other small pieces.

*N. Smith* and *W. W. Ellsworth,* contra, contended, 1. That no decree could be passed in favour of the plaintiff, because the account had not been properly adjusted. The court have already decided, that one partner cannot take the partnership property, and convert it to his individual use, at a valuation ; but that the value must be ascertained by a sale. Do the additional facts contained in the second report, deliver the case from the operation of the general rule ? There was *no agreement* of the parties to make a different disposition of the property. The conversation between them about a sale at auction, and *Munn's* objecting to that course, did not dispense with a sale in any way. And it will hardly be claimed, that *Sigourney* acquired any new rights, by writing a letter to *Munn,* which *Munn* never answered. There is no usage, shewn by the committee, which authorizes one partner to take the goods at a valuation, without the assent of the other. The intermixture of the goods with others recently purchased, was *Sigourney's* own act, which cannot affect *Munn's* rights. As to the *impracticability* of keeping a separate account of sales, it is to be observed, that *no facts* are stated, shewing any such impracticability. The court will decide upon the facts found, and not upon the opinions of the committee. It is obvious, that *Sigourney might* have distinguished the company goods, though set upon the same shelf with others, in such a manner as to enable him to keep a separate account; and that the "impracticability" spoken of by the committee, was only a small increase of labour and care. The fact that the land was purchased with a view to erect a block of buildings on it, for the accommodation of the partnership, and that *Munn* afterwards refused to go on and build, gave *Sigourney* no right to take the whole of the property to himself at a valuation. *Munn's* title to the land now is the same as though it had been built upon. A court of chancery may order this property to be divided, or sold for the payment of debts; but in no other way can any court take *Munn's* land from him, and give it to *Sigourney.*

2. That there was nothing in the case, by which the legal security of *Holbrook* could be defeated or postponed. His

equity is, certainly, as good as *Sigourney's*, unless he had no-
tice, at the time he took his security, that the land was partner-
ship property, and consequently subject to the partnership ac-
counts.   Land, generally, is not the subject of partnership.
The *nature* of the property, therefore, admonished *Holbrook*
and the world, that this was not partnership property.   11
*Mass. Rep.* 475.   3 *Bro. Ch. Ca.* 199.   The presumption is,
that the parties intended to make a conveyance according to
the legal effect of the deeds.   Now, there is nothing on the
face of those instruments leading to a contrary conclusion.
[Here the counsel went into a critical examination of the
deeds, particularly of that from *Sigourney* to himself and
*Munn.*]   There is not only nothing in any of the deeds con-
veying notice to *Holbrook*, that this land was held by *Sigour-
ney* and *Munn*, otherwise than as tenants in common, but
there is nothing to excite suspicion to the contrary in the mind
of any one—nothing to put him on enquiry after a trust estate.
It is very important, that the record should controul : to *that*
we are to look, and to nothing else.

HOSMER, Ch. J.   On the former hearing, it was determined,
that the real estate in question was advanced by *Sigourney* as
part of the company's stock, or purchased for the accommoda-
tion of the partnership business; and that these facts made it
partnership fund.

The plaintiff has alleged in his bill, that there was a balance
due to him, as partner, on the adjustment of the partnership
concerns ; and in proof of this, he has relied on a valuation of
the goods and estate of the partnership, by the estimate of wit-
nesses.  This was adjudged to be inadmissible, and no evidence
of their value.  On the contrary, it was held, that in every case,
where equity interferes to wind up the concerns of a partner-
ship, it directs the value of the stock to be ascertained in the way
in which it can best be done, that is, by a conversion of it into
money.   On this ground the case was remanded ; and it comes
again before the Court, with the addition of further facts in-
tended to overcome the adjudged difficulty in the case.

The parties have been heard, not only on the open points in
the case, but on those which were closed by the former deter-
mination.   On full consideration of the subject, I am of opinion,
that there exists no reason to question the former decision.  It
appears to be the most equitable mode of winding up a part-

nership concern ; and is so considered in chancery.    Unless a settlement and division are agreed on, it contravenes every principle of natural justice, to hold, that one partner shall compel the other to accept what, according to valuation, his interest is supposed to be worth.    *Gow on Part.* 316. 17 *Ves.* 309. A fair valuation is opinion merely ; and a separate estimate procured by one of the partners, not unusually, will be attended by false judgment and partiality, which cannot be successfully counteracted.    I am fully aware, that a private sale of the goods and effects of a partnership, on its dissolution, is sometimes detrimental, and perhaps impossible.    Resort, then, must be had to a speedy sale by auction.    Where there is a fair competition, the goods and effects may be sold at their value ; but if they are not, the best test of value is adopted, and the concerns of the partnership (which is some advantage) are speedily closed.    In all events, this is a preferable standard of value to an estimate obtained, by the procurement of one of the partners.    The case of *Marquand* & al. v. *The New-York Manufacturing Company,* 15 *Johns. Rep.* 525. has been cited as establishing a contrary doctrine.    But the question now agitated never arose in that case.    The parties mutually agreed to an inventory and valuation of the partnership stock, and the controversy was, whether its original cost, or the estimate of witnesses, should be the criterion of value.

The only question, as between the partners, is, whether on the facts disclosed in the last report of the committee, the valuation of witnesses, by way of exception from the general rule, ought to be the test in this case.

The abandonment of the partnership concerns by *Munn,* and his refusal to divide the partnership stock, and to answer the repeated solicitations of the plaintiff, amicably to adjust their joint concerns, is the first class of facts demanding attention.

To this the answer is direct and obvious.    The plaintiff was left, by *Munn,* to his own counsel, and with the law for his guide, was authorized to sell the partnership goods, at private sale or at auction ; and this is the only consequence resulting. But in whatever manner their value is to be estimated, is a point not borne upon, by the facts reported.

It is found, that merchants customarily wind up their concerns, by a division of the joint stock ; or by the purchase of it, by one of the partners ; but what this has to do with the

question before the court, it is difficult to discern. Undoubtedly, they may enter into any voluntary agreement relative to their concerns, not prohibited by law. But suppose they will not. Then, as in this case, they are to deal with the partnership property according to the prescriptions of law ; and this is the only result.

It appears from the report of the committee, that there is *no usage* here to sell the stock on hand at public auction ; and that when it has been done, it has eventuated in a considerable sacrifice or loss. These facts have no bearing on the point of discussion. If they proved any thing, it would be merely this, that one partner, at the winding up of the partnership concerns, cannot sell the stock at auction. But they have no relevancy to the question, whether the partnership effects may be valued, by the estimate of witnesses. The rule of equity is not founded on usage, but in the intrinsic propriety and necessity of the thing. Besides, that there has been no usage to sell at auction is a mere negative followed by no legal consequence, and has probably arisen from the good sense and harmony of partners, on the dissolution of their connexion.

It is of no importance that an auction sale is frequently attended with loss. This is not peculiar to us, but pervades all states and countries, probably, in nearly the same degree. A voluntary adjustment of their concerns, by partners, is the better course, and precludes the necessity of any other. But if they do not, and will not agree, some mode of winding up their concerns must be adopted; and perhaps there can be none not attended with loss and disadvantage. A private sale, or sale at auction, becomes indispensable ; and the consequences must be submitted to.

Too much has already been said on a subject that has no bearing on this case. There has been no sale at auction. *Sigourney*, abandoned by his partner, has done what he had a right to do. He has sold the partnership effects at private sale, with the exception of a few goods, remaining on hand ; and in this branch of his proceeding no question has arisen. He, however, has omitted to keep an account of sales ; and whether under the circumstances attending this case, this omission will let in proof of a valuation of the goods and effects of the partnership, by the estimate of witnesses, is the real point of enquiry.

*Hartford,*
June, 1829.

Sigourney
*v.*
Munn.

On general principles, it is clear, that an agent, (and such is a partner) is bound to render a written account, comprising the items of the goods sold, with the sums at which they were disposed of, and to substantiate it, by his oath. *Coop. Eq. Plead.* 277, 8. *Gow on Part.* 121. *Stat.* 33. What, then, creates an exception in this case ?

The committee find, that to render the goods more saleable, the plaintiff replenished the stock, by the purchase of new and more vendible articles, and so intermixed the old goods with his new purchases, that it became impractible for him to keep a separate account of the old stock, owing to the number and condition of the articles. I cannot but think, that they have unintentionally employed a word in their report, which does not convey their meaning, and which no possible state of facts could warrant. The intermingling of the goods might create a *difficulty* in keeping an account of sales, but not an *impracticability.*

But if a strict impracticability of distinguishing the goods, existed, (a supposition put for the sake of the argument only,) whence did it arise ? From the voluntary act of the plaintiff. If the goods were in this condition, he produced it. By what authority was it done ? By no authority. It was neither authorized by *Munn,* nor by any principle of law. The impracticability resulted from an unjustifiable act. And is an established rule of law to bend to the volition and culpable act of Mr. *Sigourney ?* And may he take advantage of his own wrong ?

There is nothing in the case distinguishing it from what it was at the former hearing. If at the election of one of the partners, the voluntary intermingling of goods dispenses with a strict accountability in the usual manner, it is easy to see, that a rule of law is converted into the volition of the party. And of what value is a rule, (falsely so called) over which the person in interest may exercise a dispensing power, at his election ?

Let the subject be placed in a different light. The plaintiff was an agent of the partners, and, as such, was bound to keep and render an account of sales. With open eyes on the consequences, pre-determined and foreseen by him, he voluntarily placed himself in a condition, in which he could not fulfil this duty. What, then, is the reasonable result ? He must submit to the known rule of law, and can derive no advantage from his unauthorized act.

It has been asked with emphasis, are not the concerns of *Hartford,* the partnership ever to be settled ? I feel myself under no ^June, 1829.^ obligation to answer this general question ; nor is it at all in- ^Sigourney^ volved in this case. The plaintiff has exhibited a bill ; and ^v.^ ^Munn.^ every fact indispensable to its support, he must substantiate, by legal evidence. If through carelessness, improvidence or choice, he has placed such proof beyond his power, he cannot, in this manner, impair any obligation essential to the just rights of his partner.

The conduct of Mr. *Sigourney,* it has been said, was, *intentionally,* honourable and just. In this particular, it has not been questioned ; and I admit it to be unquestionable. I think, however, it has been heedless, ill-judged, and without a deliberate attention to the obligation resting upon him. His fair intentions cannot deprive *Munn* of his legal rights ; nor make that to be law in his case, which ought not to be law in the case of another.

An enquiry has been raised, whether from the recorded deeds, *Holbrook,* the mortgagee of *Munn,* had constructive notice, that the property conveyed to him was partnership fund. The determination of this point is not necessary ; but as the Court has come to a result upon it, it is proper that it should be known. The decision, and the reasons on which it is founded, I will state very briefly.

Whatever is sufficient to put a person on enquiry, is considered in equity as conveying notice ; as the law imputes to a person the knowledge of a fact, of which the exercise of common prudence and ordinary diligence must have apprised him. *Peters* & al. v. *Goodrich,* 3 *Conn. Rep.* 146. *Newl. on Contr.* 510.

None of the recorded deeds directly show, that the real estate mortgaged to *Holbrook,* was partnership fund. Notwithstanding this, if on the face of either deed there was such an indication of this fact as to place the mortgagee under a reasonable obligation to make enquiry on this subject, he must be deemed to have had constructive notice.

The instrument to which I shall first advert, is a deed of release, in the usual form, from *Charles Sigourney* to himself and *Charles Munn.* The consideration expressed in this instrument, is "*one dollar,* received of *Charles Sigourney* and *Charles Munn,* merchants in trade under the firm of *Charles*

*Hartford,*
*June, 1829.*

*Sigourney*
*v.*
*Munn.*

*Sigourney & Co. ;"* and the land is released to them, " to be held in such proportion as is agreed on between them."

This writing has a number of striking singularities, calculated to awaken attention. It is a deed from *Sigourney* to *himself* and *Munn*, described as merchants in company ; and as to himself, it conveys no title. It is no far-fetched presumption from the face of this instrument, that it was intended to invest the company with a fund for their partnership purposes. The nominal consideration of one dollar only, strengthens this inference, resulting as it does from the name and description of the company ; a fact both useless and improbable on any other supposition. The presumption is still further enforced, by the nature of the deed, which is a release, and the conveyance of the land to a partner, to be held in proportions that had been agreed on between them. The majority of the Court is of the opinion, that *Holbrook*, who must be presumed to have read this writing, could not fail to observe its peculiarities ; to have his attention awakened and stimulated by them ; and to see the path, that would conduct him to a full knowledge of the rights of the plaintiff. Of consequence, the Court is of opinion, that he had constructive notice, that the land was partnership fund.

The deed of release from *Lloyd* to *Charles Sigourney* and *Charles Munn*, for the consideration of 5942 dollars, 3 cents, received of them, being merchants in company under the firm of *Charles Sigourney & Co.*, has one peculiarity only, and that is, the description of the partnership, by the name of the firm. In all other respects, it has the ordinary appearance of a sale to individuals. The unnecessary and somewhat unusual description of *Sigourney* and *Munn* as partners, unaided by any other consideration, had not so high a tendency to put *Holbrook* on enquiry, or to stimulate him to investigation, as to place him under an obligation to look beyond the deed. Confining himself to the instrument, which neither indicated, that the land was bought with partnership fund, nor appropriated to partnership purposes, he had no reason to believe, that the land belonged to *Sigourney* and *Munn* otherwise than as tenants in common.

The deed of release from *Pratt* to *Charles Sigourney* and *Charles Munn*, and that from *Dimock*, are attended with no peculiarity, and contain no expression pointing to the partnership.

An effort was made in argument to connect the three latter *Hartford,* deeds with the one from *Charles Sigourney* to himself and June, 1829. partner, but without any foundation. The three last deeds Sigourney comprise separate and distinct pieces of land from the one *v.* first referred to ; conveyed by different persons, at different Munn. times ; and instead of disclosing a connected transaction, arising under the same agreement, they are disjoined by every consideration applicable to such a subject. They are not distinguished from any ordinary transaction with individuals acting in their individual capacity, and present no motive for enquiry beyond the deeds themselves.

In conclusion ; for the deficiency of proof, in this case, of the indebtedness of *Munn* to *Sigourney,* the Court advise, that the bill be dismissed.

BISSELL, J. was of the same opinion.

PETERS, J. dissented, so far as regarded the relief sought against *Munn.*

DAGGETT and WILLIAMS, Js., having been of counsel in the cause, gave no opinion.

Bill to be dismissed.