JOSIAH ALKIRE *et al.*

*v.*

CHRISTIAN KAHLE.

*Filed at Mt. Vernon January 20, 1888.*

1. PARTNERSHIP—*whether land is to be considered partnership property.* To make land partnership property, it must have been purchased with partnership funds for partnership purposes, or at least there must have been one of these elements present.

2. The fact of a conveyance of land being made to the members of a co-partnership, even though the grantees may be described in the deed as "composing the firm of," giving the firm name, affords no indication that the land was purchased with partnership funds or appropriated to partnership purposes. That was but *descriptio personæ* of the individual grantees in the deed.

3. SAME—*rights of individual partners in respect to the partnership effects, including lands.* The separate estate or interest of a co-partner in any of the co-partnership effects, is only his share of that part thereof which remains after the debts of the firm and the demands of his co-partners, as such, are satisfied; and if one of the partners has paid more than his share of the partnership debts, he will have a claim upon the partnership property, including real estate, which, in equity, is paramount to the claims of the separate creditors of his co-partners. And the real estate of the firm is, in equity, to be treated as part of the effects of the firm.

4. ALTERATION—*case showing change in date of deed.* In this case the facts and circumstances are stated, from which the court finds that a deed of a judgment debtor, of land to his partner, made, in fact, in 1886, after the recovery of the judgment, was altered by the erasure of the figure "6" and putting the figure "4" in its place, so as to make its date appear to have been in 1884, and prior to the judgment.

APPEAL from the Circuit Court of Madison county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. HAPPY & TRAVOUS, for the appellants:

The deed from Henry Robinson to Cato Abbott was not admissible without explanation of the alterations in its date; and in the absence of explanation it will be presumed such

alterations were made after its execution, and being material they are fatal to the validity of the deed. *Walters* v. *Short*, 5 Gilm. 252; *Hodge* v. *Gilman*, 20 Ill. 437; *Montag* v. *Linn*, 23 id. 551; *Pyle* v. *Oustatt*, 92 id. 209.

Complainant is not a *bona fide* purchaser, and hence not entitled to any relief or protection, because he has not paid the consideration. *Moshier* v. *Knox College*, 32 Ill. 155; *Keys* v. *Test*, 33 id. 316; *Roseman* v. *Miller*, 84 id. 297; *Wait* v. *Smith*, 92 id. 385; Story's Eq. Jur. secs. 64 c, 381, 1502, 1503. And because he was informed, at the time of his purchase of the Alkire judgment, the certificate of sale to appellant Travous was of record, and the suit of *Abbott* v. *Alkire et al.*, in which his grantor claimed but a half interest in the land, was pending. *Railroad Co.* v. *Kennedy*, 70 Ill. 350; *Russell* v. *Ranson*, 76 id. 167; *Hunter* v. *Stoneburner*, 92 id. 75; *Alwood* v. *Mansfield*, 59 id. 496; *Dickson* v. *Todd*, 43 id. 504; *Garrick* v. *Chamberlain*, 97 id. 620; *Vanlandingham* v. *Ryan*, 17 id. 25; *Knowlton* v. *Hanbury*, 117 id. 471.

Appellant Travous is an innocent purchaser, and having purchased in good faith, without notice of any equities, and for a valuable consideration actually paid, equity will protect him. *Robinson* v. *Rowan*, 2 Scam. 499; *Massey* v. *Westcott*, 40 Ill. 160; *Bogue* v. *Williams*, 48 id. 371.

The representations and conduct of complainant's grantor, Abbott, respecting the ownership of this land, estop the complainant from asserting any rights as against appellant Travous, who purchased on the faith of such representions. *Clark* v. *Morris*, 22 Ill. 434; *Cochran* v. *Harrow*, id. 345; *Hefner* v. *Vandolah*, 57 id. 520; *Anderson* v. *Armstead*, 69 id. 452; *Noble* v. *Christman*, 88 id. 186; *Harding* v. *LeMoyne*, 114 id. 65; Bigelow on Estoppel, 434, 452; *Grimshaw* v. *Paul*, 76 Ill. 164; *McCoy* v. *People*, 71 id. 111; Greenleaf on Evidence, secs. 172, 189; *Williams* v. *Judy*, 3 Gilm. 282; *Simpkins* v. *Rogers*, 15 Ill. 397; *Vennum* v. *Thompson*, 38 id. 143; *Mueller* v. *Rebhan*, 94 id. 142; *Randegger* v. *Ehrhardt*, 51 id. 101.

Messrs. METCALF & METCALF, and Messrs. WISE & DAVIS, for the appellee:

Open and notorious possession of land is sufficient to put subsequent purchasers and incumbrancers upon inquiry, and is constructive notice to them of the occupant's legal or equitable claim to the land. *Keys* v. *Test,* 33 Ill. 316; *Truesdale* v. *Ford,* 37 id. 210; *DeWolf* v. *Pratt,* 42 id. 200; *Lyman* v. *Russell,* 45 id. 281; *Warren* v. *Richmond,* 53 id. 52.

Actual possession of land under a parol or unrecorded contract or an unrecorded deed made prior to the recovery of the judgment against the vendor, is notice to the judgment creditor, and all persons claiming under him, of the purchaser's rights. *Walsh* v. *Wright,* 101 Ill. 178; *Brainard* v. *Hudson,* 103 id. 218; *Weber* v. *Curtis,* 104 id. 320; *White* v. *White,* 105 id. 313.

Possession of land by the tenant is notice of the landlord's rights. *Whitaker* v. *Miller,* 83 Ill. 381; *Hayworth* v. *Taylor,* 108 id. 275; *Bank* v. *Sperling,* 113 id. 282.

The partnership of Abbott & Robinson being insolvent, and this land being partnership property, and Abbott, having paid the partnership debts to the amount of $2500, being more than the value of the land, would be entitled to reimbursement out of the proceeds of said land before the individual creditors of Robinson would become entitled to the land or its proceeds; but Robinson having deeded Abbott his half interest in the land in consideration of said payments by Abbott, he has the same rights as if the land had been sold, and purchased by him under a decree to wind up the partnership business. *Ruffner* v. *McConnel,* 17 Ill. 212; *Bank* v. *Bank,* 94 id. 274; *Ladd* v. *Griswold,* 4 Gilm. 25; *Morrison* v. *Kurtz,* 15 Ill. 196; *Rainey* v. *Nance,* 54 id. 29; *Preston* v. *Colby,* 117 id. 477.

If, on the settlement of firm affairs, one partner is found to be indebted to the other, the latter may retain enough of the partnership assets to cancel the indebtedness, if they are in

his hands and the firm debts are all paid. *Mack* v. *Woodruff,* 87 Ill. 570.

Partnership realty is treated in equity like personal funds. *Faulds* v. *Yates,* 57 Ill. 416; *Bopp* v. *Fox,* 63 id. 540.

Partnership property must first be applied to the payment of partnership debts, and the true and actual interest of each partner in the partnership stock is the balance found due to him after payment of all the partnership debts and the adjustment of the partnership account between himself and his co-partners; and, in equity, real estate forms no exception, but stands on the same footing, in this respect, with personal property, no matter in whom the legal title may be vested. *Taft* v. *Schwamb,* 80 Ill. 289; *Bopp* v. *Fox,* 63 id. 540; *Woodbridge* v. *Cross,* 117 id. 109; *Simpson* v. *Leach,* 86 id. 226.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in equity, brought by Christian Kahle, against Alkire & Co. and Charles N. Travous, to set aside a sheriff's sale and certificate of purchase of a certain tract of land made to Travous, on an execution upon a judgment, in favor of Alkire & Co., against one Henry Robinson.

The original bill set forth that· on August 26, 1884, Cato Abbott and Henry Robinson were each seized in fee simple of an undivided one-half of the land; that on that day, Robinson conveyed his one-half to Abbott, the deed whereof was recorded May 26, 1886; that upon the execution of the deed from Robinson, Abbott entered into and continued in the possession of the premises until the sale thereof to complainant; that on April 24, 1886, complainant purchased the same from Abbott for the consideration of $1800, and received a warranty deed therefor; that at the October term of court, 1884, Alkire & Co. recovered a judgment against said Robinson, under which, on execution, the sheriff's sale in question, of Robinson's interest

in the land, was made to Travous on August 24, 1885. At a late stage of the cause, after answers, replication and reference to the master to take testimony, the bill was amended by alleging further that the land in question was partnership property, of the firm of Abbott & Robinson; that there had been a dissolution of the firm; that it was insolvent and unable to pay its debts, and that Abbott had advanced, for the firm, moneys, by paying debts of the firm of a greater amount than the value of the land, claiming a superior equitable lien upon the premises on that account, and that since filing the original bill, a sheriff's deed had been made to Travous, and asking that it should be set aside. The court below, upon hearing, on proofs taken, decreed in favor of the complainant, and the defendants appealed.

The ground of the complainant's claim for relief, by the original bill, is, that Robinson had no interest in the land at the time the judgment against him was obtained and the sale under execution thereon made; that he had previously conveyed away his interest to Abbott, and, under the amended bill, that if Robinson had any interest in the land at the time of the judgment, it was subject to a valid lien, in equity, which Abbott had upon it as partnership property for what was due to him as partner in the firm of Abbott & Robinson.

The judgment against Robinson was at the October term, 1884. To show that at that time Robinson had no interest in the land, complainant introduced in evidence a quitclaim deed from Robinson to Abbott, of Robinson's interest in the land, purporting to bear date February 26, 1884, and Robinson & Abbott testified, generally, that the deed was executed at the time it bears date, and the officer who took the acknowledgment testified that it was taken before him at the time it bears date,—which was February 26, 1884. In opposition to this, the defendants introduced four witnesses, three of them being entirely disinterested, who testified that in the date of the year appearing in the body of the deed and in the certificate

of acknowledgment, (1884,) there had been an erasure of the
last figure in the number of the year, and the figure "4" written
over it, making it read 1884; that in the certificate of ac-
knowledgment, the erasure was complete, there being no trace
of the figure erased left, but that in the body of the deed the
erasure had been so imperfectly made, that by an examination
under a glass the figure "6" was plainly to be seen under the
figure "4." There was no rebuttal whatever of this testi-
mony, but it stood entirely uncontradicted, with no attempt at
explanation of the erasure and alteration of date. All that
appeared as in any way opposed thereto, was the general state-
ment before referred to, made by witnesses on introduction of
the deed by the complainant, that the deed was executed at the
time it bears date. But Robinson, one of the witnesses who
had so testified in chief, on cross-examination said: "All I can
tell about the execution and delivery is from the date of the
deed. Have no recollection aside from that. When I testi-
fied this deed was executed on the 26th of February, 1884, it
was because the deed bears date that day." The same may
have been the case with the two other witnesses who testified
the deed was executed at the time it bears date. It appears
that the writing in the body of the deed and in the certificate
of acknowledgment was made by different persons,—Robinson
and the officer taking the acknowledgment. It would be ex-
traordinary that they both should make the same identical
mistake in the date of the year.

There is corroborative evidence of the alteration of the date
of the deed. Abbott & Robinson executed a written lease of
the land, dated August 23, 1883, for one year, from March 1,
1884. The tenant occupied the land for three years, from
March 1, 1884, he testifying that he knew of no change in the
ownership of Abbott & Robinson. The rent for the first two
years he paid to Abbott, the latter signing all the rent receipts
in the name of Abbott & Robinson.

On April 3, 1885, Abbott procured an abstract of title of the land to be made, for the purpose of borrowing money on his interest. The abstracter testifies that at that time Abbott objected to the abstract, showing the judgment against Robinson, as it had nothing to do with his half, and that Abbott then told him Robinson had promised at one time to deed him his half, because he had paid some debts for him, but that Robinson had never done so. Abbott says he does not remember so telling the abstracter.

The banker to whom Abbott applied for the loan in the spring of 1885, testifies that he was satisfied with the security on Abbott's half interest in the land, but as the abstract presented showed the title to be in Abbott & Robinson, he was apprehensive there might be a partition suit, to which he did not wish to be a party, and for that reason he refused to make the loan to Abbott. He says that Abbott did not then claim to own more than one-half of the land. The person who accompanied Abbott at the time, to assist him in obtaining the loan, testifies to the same effect. Mr. Happy, to whom this money expected to be borrowed was to be paid, to satisfy a judgment against Abbott, testifies that Abbott told him of the refusal of the loan,—that he said he only had an undivided interest in the land he had offered as security, and that the banker had refused to loan him the money on an undivided interest, and he would have to make other arrangements. This witness was interested as a purchaser from Travous of one-half of his interest in the land. The defendant Travous testifies, that some two or three days before the sale under the execution, in a conversation he had with Abbott, the latter told him that Robinson had promised to deed his half of the land to him, (Abbott,) but never had done so, and now it was going to be sold away from them,—to all which Abbott says he does not recollect the occurrences.

We are satisfied, from the evidence, that the deed from Robinson to Abbott was not made on the 26th day of February,

1884, as it so purports, but that it was made subsequent to the recovery of the judgment of Alkire & Co. against Robinson, and so subject to the lien of that judgment, unless the claim, under the amended bill, of a paramount equitable lien of Abbott upon the land, as partnership property, can be sustained. Respecting such claim, it appears that the firm of Abbott & Robinson, consisting of Cato Abbott and Henry Robinson, was formed in 1857, to do a general merchandise business, at Venice, in Madison county, Illinois, the partnership continuing until December 5, 1881, when it was dissolved by Cato Abbott selling out to two other individuals his interest in the stock of merchandise then in the store. The partnership name of the new firm was Henry Robinson & Co. A warranty deed of the land in question was made September 24, 1872, conveying the same to "Cato Abbott and Henry Robinson, composing the firm of Abbott & Robinson, of the county of Madison and State of Illinois."

We recognize it as a principle of the law of partnership, that the separate estate or interest of a co-partner in any of the co-partnership property is only his share of that part of the co-partnership effects which remains after the debts of the firm, and the demands of his co-partners, as such, are satisfied; and if one of the co-partners has paid more than his share of the partnership debts, he has a claim upon the partnership property, which claim, in equity, is paramount to the claims of the separate creditors of his co-partners, and that real estate of a co-partnership is, in equity, to be treated as part of the effects of the firm.

The fact of the conveyance being to the members of the partnership did not make the land co-partnership property, nor did the mention in the deed of the grantees as "composing the firm of Abbott & Robinson" do so. (*Sigourney* v. *Munn*, 7 Conn. 334.) That was but *descriptio personæ* of the individual grantees in the deed. Such a description of the grantees, as said in the case last cited, affords no indication that

the land was purchased with partnership funds, or appropriated to partnership purposes. To have made this land partnership property it must have been purchased with partnership funds for partnership purposes, or at least there must have been one of such elements present. Parsons on Partnership, 364, 365; Collyer on Partnership, sec. 135, and cases cited in note; *Hoxie* v. *Carr*, 1 Sumn. 183; *Buchan* v. *Sumner*, 2 Barb. Ch. 165; *Wheatley's Heirs* v. *Calhoun*, 12 Leigh, 264; *Alexander* v. *Kimbro*, 49 Miss. 529.) The business of this co-partnership was that of merchandising in a small village. The land in question was farm land, situated several miles distant, and does not appear to have had any connection in any way with the business of the partnership. The evidence shows the land was sometimes rented, and a part of the time Abbott and Robinson farmed it themselves, sowing it generally in wheat. There is in the record no evidence whatever that the land was purchased for partnership purposes, or that it was appropriated to any purpose of the partnership; and, as we think, there is an equal absence of evidence that the land was purchased with partnership funds. All that there appears in this respect, aside from the description in the deed above adverted to, is that Abbott and Robinson, in giving their testimony herein some five years after the dissolution of the partnership, in enumerating the assets of their merchandising business, class this land among the assets of the firm. There is not an intimation in their testimony that the land was bought with partnership funds or for partnership purposes, or that it was ever put to partnership use, and no other witness speaks upon the subject. Such calling of land assets of a partnership, as above mentioned, does not make it such, and we do not regard it as evidence which should impress the land with the character of partnership property. In order for that, there should be some evidence of the elements which go to constitute the land partnership property,—some evidence of facts going to show it to be partnership property.

We find, from the evidence, that the land in question was real estate held by the two co-partners, Abbott and Robinson, as tenants in common, and not as a part of the partnership property, and consequently that there is no foundation for the equitable claim which is set up of Abbott upon the land as partnership property.

The decree will be reversed, and the cause remanded with direction to dismiss the bill.                    *Decree reversed.*