ARCHIBALD G. LINDSAY v. U. GRANT RACE, ADMINISTRATOR OF THE ESTATE OF PATRICK M. GAMBLE, DECEASED, ET AL.

*Partnership—Real estate—Firm debts—Accounting—Parties.*

1. Two owners of pine lands formed a partnership for the purpose of lumbering off the land and disposing of the timber. They afterwards included in the venture a retail lumber business, and to that end erected and operated a planing mill. About 14 years after the formation of the partnership, the partners purchased on contract in their individual names the timber on

a tract of pine land for the agreed price of $125,000, of which $31,250 was paid down. This latter sum was raised upon the individual note of the partners, signed by a third party, who was to have an interest in the land. The contract was assigned to the bank which discounted the note as collateral security. An account was opened on the firm books with the land, naming it, in which it was charged with the purchase price, which was credited to the vendors. The bank was charged with the $31,250, which sum was credited to " Bills Payable." A memorandum was made of the giving of the note, describing it, and of the assignment of the contract. The vendors were charged with the $31,250, and the bank was credited with a check for the same, which was stated to be the first payment on the land. When the second payment matured, the vendors were charged with the same, and with the interest on the deferred payments, which latter sum was charged to the land. These sums were paid by checks of the firm drawn upon two banks, which were charged on the same day with the proceeds of certain bills receivable held by the firm, with the proceeds of the firm note for $5,000, and with certain checks deposited by the third party before mentioned. About two years after the purchase, the land was charged with $45.45 as expenses incurred by one of the partners, and he was given credit for the same. The firm, just prior to the giving of this credit, had sold the timber to other parties, reserving a third interest therein, which reservation was evidenced by a separate contract for the sale of said interest running to one of the partners alone, but in which the other partner was interested either as a partner or joint owner. The surviving partner filed a bill against the estate of the deceased partner to secure, among other things, a determination that the proceeds arising from the sale by the firm of said timber were partnership property. And it is held that the intent of the partners to treat the purchase of the timber as a partnership transaction is fairly shown.[1]

2. The administrator of the estate of the deceased partner applied to the probate court for license to sell the interest of the estate in certain lands, and was required by the court to set out all the land in which the decedent was interested. The administrator thereupon applied to the surviving partner for information, and was informed that said third party who was to have an interest in said timber, the decedent, and the sur-

---

[1] For an exhaustive note on the question when real estate will be considered partnership property, see *Bank v. Miller*, 27 L. R. A. 449.

viving partner each owned one-third of said reserved interest. And, in answer to the contention that these statements are inconsistent with the claim made in the bill that the timber was to be deemed partnership property, it is held that it is not uncommon for partners, in speaking of their interest in the partnership property, to refer to their ownership as an aliquot part which corresponds to their interest in the partnership; that, under the circumstances, the effect of the testimony as to the statements of the surviving partner is to show nothing more than that he was inaccurate in his statement; and that it is quite clear that he did not intend to assert that the firm creditors were not concerned in the timber.

3. The partners, with two others, purchased another tract of pine timber, for which a contract was taken in the names of all. The contract contained a recitation that the grant, sale, and conveyance should be to the parties of the second part (the four vendees), and be held by them as copartners and joint owners therein in certain unequal, undivided shares; and by a separate agreement of even date it was provided that the liability upon the contract and the notes given therewith, as between the purchasers, should be as their individual interests were stated in the contract, and that, if any of the purchasers should pay anything on the contract or notes for or in behalf of any of the other purchasers, he should have a lien upon the undivided interest of such other purchaser for such payments. None of the firm money was used in making the first payment on this contract. And it is held that while, in view of the subsequent entries in the firm books, it is not altogether clear that the parties did not intend this as a firm transaction, yet, as the burden of proof rests upon the complainant to remove the strong presumption which arises from the form of the written instruments,—if, indeed, they are not sufficiently specific to be conclusive,—the timber should not be treated as partnership property.

4. After the sale by the firm of the tract of timber first referred to, an agreement was made between the two partners and the third party who was to have an interest in said timber, in which, after reciting that they were jointly interested in the purchase of the timber, the amount advanced by said third party, and the sale of the timber by the firm, it was agreed that the partners would pay said third party the money advanced and paid by him on the purchase price of said timber, with interest thereon, and, in addition, one undivided one-third of all the net profits arising out of the purchase and sale of the timber, said sums to be paid when said partners should receive payments on the contract for the sale of said

timber by them. And it is held that said third party is not a necessary party to the said suit.

5. Where in a suit by a surviving partner against the estate of the deceased partner to secure, among other things, a determination that the proceeds arising from the sale by the firm of certain timber, the contract for which ran to the partners in their individual names, are partnership property, it is agreed that that is the only question to be litigated, and the subject of an accounting is not gone into by the estate, a determination as to whether the estate is indebted to the complainant should not be made until the accounting is completed.

Appeal from Wayne. (Reilly, J.) Argued October 3 and 4, 1894. Decided December 18, 1894.

Bill to subject certain lands to the payment of partnership debts, and for an accounting. Defendant Race appeals. Decree reversed in part, and case remanded for an accounting. The facts are stated in the opinion.

*DeForest Paine* and *Hoyt Post,* for complainant.

*George W. Radford* and *Edward A. Barnes,* for appellant.

MONTGOMERY, J. This suit is between Archibald G. Lindsay and the administrator and heirs at law of Patrick M. Gamble, deceased. Complainant and Patrick M. Gamble were, during the lifetime of the latter, copartners. The firm was organized about the year 1872, the two partners being then owners of some pine lands in Bay county, and the partnership would appear to have been formed for the purpose of lumbering off and disposing of the pine on these lands. The business afterwards included a retail lumber business in Detroit, a planing mill being erected on land purchased by them in Detroit, and used in connection with that business. During the existence of this copartnership, the parties purchased and became interested in various · tracts of land. The purpose of this

bill is to have a determination that the proceeds of certain of these lands are copartnership property, although such proceeds have come into the hands of the administrator of Patrick M. Gamble. While other descriptions are involved, there seems to be a substantial disagreement on but two tracts, referred to in the record and briefs as the Ontonagon and the Bayfield lands, being two separate purchases, the former in Ontonagon county, Mich., the latter in Bayfield county, Wis. The circuit judge found both of these tracts to be copartnership property, and defendant Race appeals.

A brief history of the connection of Lindsay & Gamble with the Bayfield lands is as follows: On the 28th of June, 1886, a contract of sale and purchase was made between David Whitney and others, owners of the Bayfield lands, on the one part, and Archibald G. Lindsay and Patrick M. Gamble, of the other part, by which the parties of the first part agreed " to sell to the parties of the second part all the pine timber standing or growing " on certain pieces of land in Bayfield county, etc. The consideration price was $125,000, payable in installments, the down payment being $31,250. The payment was made by check on the Detroit National Bank, and the fund was created by complainant, Patrick M. Gamble, and Henry Gamble executing a note in their individual names, and discounting it at the bank. An account was opened on the firm books of Lindsay & Gable of " Pine Lands, Bayfield County, Wisconsin," against which was charged $953.13, June 28; $3, June 30; and $78.20, on August 5. On January 15, 1887, the transaction was entered more at large on the books. Pine lands, Bayfield county, Wis., were debited $125,000. A credit was extended to D. Whitney et al. (the vendors), $125,000. The Detroit National Bank was charged with $31,250, which was credited to " Bills Payable," with the following memorandum:

"Gave the bank June 28, '86, the joint note of A. G. Lindsay, P. M. Gamble, and Henry Gamble, at 6 months (the interest at 6%, $953.13, being paid by L. & G.), and assigned the pine land contract to the bank as collateral security."

On June 28, 1887, the books charge the Michigan Savings Bank with proceeds of bills receivable, $10,347.96, and the People's Savings Bank with a deposit of note of Lindsay & Gamble of $5,000, and also checks remitted by Henry Gamble of $12.682. D. Whitney *et al.* are charged with $37,812.50, which consisted of a check on the People's Savings Bank of $26,907.19, and a check on the Michigan Savings Bank for $10,905.31. $6,562.50 of this payment was interest, and is charged on the books of the firm to pine lands, Bayfield county, Wis. On July 31, 1888, Patrick M. Gamble is credited with sundry expenses, including a charge of $45.45 against pine lands, Bayfield county, Wis., June 30 to July 6, to St. Paul, Duluth, etc. In July, 1888, Lindsay & Gamble sold the contract to Frederick Marvin and De Forest Paine, reserving a third interest, which was represented by an agreement running to Lindsay alone, but in which it is conceded that Mr. Gamble was interested, either as a partner or a joint owner. This transaction was entered upon the books. This was previous to the entry of July 31, crediting Patrick M. Gamble, expenses to St. Paul, etc.

Whether lands held in the name of one partner or of both are to be deemed copartnership property is generally a question of intent, to be gathered from the manner in which the members of the firm have dealt with them. While the fact that funds of the copartnership have been used in paying for the lands, when originally purchased or subsequently, is not conclusive of this intent, yet it is persuasive evidence, and when, as in this case, it is accompanied by the entry of the transaction on the firm

books, as a copartnership transaction, under circumstances which import a daily declaration that it was so regarded, is convincing.     See *Merritt v. Dickey,* 38 Mich. 41; *Way v. Stebbins,* 47 Id. 299; *Williams v. Shelden,* 61 Id. 311.

It is strenuously urged that the statements of complainant made after the death of Mr. Gamble are inconsistent with the claim now made.     It appears that the administrator of the estate of Mr. Gamble made application to the probate court for leave to sell the interest of Gamble in certain real estate, and was required by the court to set out all the land in which Gamble was interested.     The administrator thereupon applied to Mr. Lindsay for information, and was told that Henry Gamble had a third interest in that portion of the Bayfield lands reserved, Patrick. M. Gamble one-third, and he (Lindsay) one-third.     If the complainant fully understood the legal interest which is vested in a copartner, this statement would be strong evidence against the contention which he now makes.     But it is not uncommon for partners, in speaking of their interest in copartnership property, to refer to their ownership as an aliquot part which corresponds to their interest in the copartnership; and it appears that in this very case Mr. Lindsay, referring to the Detroit lumber yard lands, stated:

" The foregoing is Lindsay & Gamble's lumber yard, in city of Detroit.     Interest of Patrick M. Gamble is one-half."

Yet it is conceded that, under the facts shown, the lumber yard is copartnership property, and Patrick M. Gamble's interest was not one-half until the copartnership transactions were closed and the firm debts paid.     The effect of this testimony is, therefore, to show nothing more than that complainant was inaccurate in his statement.     It is quite clear that he did not intend to assert

that the firm creditors were not concerned in the lands.

Taking the evidence as a whole in this case, we cannot escape the conclusion that the intention to treat this Bayfield purchase as a partnership transaction is fairly shown.

The Ontonagon lands stand upon a somewhat different footing. Complainant's counsel in their brief state:

"We recognize that the court might very well come to the conclusion that it [the Ontonagon tract] rested on quite different footing from the main subject of controversy,—the Bayfield pine,—and might very well hold the Bayfield pine to be partnership assets, and the Ontonagon pine to have been so treated by the written contracts between the parties as to take it out of the partnership."

While contending that, even as to these lands, the decree of the court below was right in decreeing them to be copartnership property, yet complainant's counsel concede that the form of the papers made in this purchase and the mode of final disposition make a substantially different case as respects these lands than that relating to the Bayfield tract. In the purchase of the Ontonagon tract, a contract was taken running to Thomas Nester, Archibald G. Lindsay, Patrick M. Gamble, and De Forest Paine. The contract contained the recitation that—

"The grant, sale, and conveyance shall be to the said parties of the second part, and held by them as copartners and joint owners therein, in the proportions following, to wit: One undivided third thereof to said Thomas Nester; one undivided sixth thereof to said Archibald G. Lindsay; one undivided sixth thereof to said Patrick M. Gamble; and one undivided third thereof to said De Forest Paine."

And on the same day an agreement was entered into between the parties, which provided that "the liability upon said contract and all said notes, as between the parties hereto, is as their individual interests are stated in said contract, to wit: Thomas Nester, one-third; Archibald

G. Lindsay, one-sixth; Patrick M Gamble, one-sixth; De Forest Paine, one-third,"—and further provided that, if any of the parties should pay anything on the contract or notes for or in behalf of any of the other parties, he should have a lien upon the undivided interest of the other for such payments; and it appears that, when the first payment was made, none of the firm money was used for the purchase. While, in view of the subsequent entries in the books, it is not altogether clear that the parties did not intend this as a firm transaction, yet, as the burden of proof rests upon the complainant to remove the strong presumption which arises from the form of the written instruments,—if, indeed, they are not sufficiently specific to be conclusive,—we hold that these lands should not be treated as copartnership property.

It is urged that, as Henry Gamble is interested in the proceeds of the Bayfield lands, he should be made a party. After the sale to Marvin and Paine, an agreement was made which recited that Patrick M. Gamble, Archibald G. Lindsay, and Henry Gamble were jointly interested in the purchase of the lands, and that Henry Gamble had advanced $12,952, and Lindsay and Gamble had sold the land contract for $175,000. It was agreed that—

"Said Lindsay and Patrick M. Gamble will pay to said Henry Gamble said moneys advanced and paid by him on the purchase price of said lands, together with interest thereon, and that, in addition thereto, they will pay to said Gamble one undivided one-third of all the net profits arising out of the purchase and sale of said lands aforesaid, said payments to be made at the times when said Lindsay and Patrick M. Gamble shall receive payments on the said contract of sale made by them in duplicate."

The agreement contemplated that the proceeds of the land were to come into the possession of Lindsay & Gamble, whether as partners or as individuals, and both were made liable in this undertaking to pay Henry Gamble the

amount due him. His remedy is not affected by this proceeding. If, as between complainant and the administrator of the estate of Patrick M. Gamble, the complainant is entitled to the possession of the fund, it is no answer to say that, when in the proper custody, it will be subject to the claims of Henry Gamble. It is true the claim is one which might be proven against the estate of Patrick M. Gamble, but so of all the partnership indebtedness. The primary fund for its payment is, however, the copartnership fund.

It is contended that the decree went too far in determining that the firm was indebted to the complainant. We think that the decree in this respect is premature. It appears to have been agreed between the parties that the only question to be litigated in the present bill was whether these several tracts of land were copartnership property. The defendants did not go into the subject of accounting, and the determination as to whether the estate is indebted to complainant should not be had until the accounting is completed.

The decree will be modified, and the finding that the Ontonagon lands were copartnership lands reversed. In other respects the decree relating to these lands will be affirmed, and the case remanded for an accounting. Appellant will recover costs of this Court.

The other Justices concurred.