(No. 21634.—

EMMA NEHRKORN, Appellee, *vs.* CHARLES A. TISSIER *et al.* Appellants.

*Opinion filed February 23, 1933—Rehearing denied April 13, 1933.*

FARMER & KLINGEL, and PHILIP G. LISTEMAN, for appellants.

P. K. JOHNSON, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This is an appeal by Charles A. Tissier, Oscar Becherer and Charles Muendelein from a decree of the city court of East St. Louis in favor of appellee, Emma Nehrkorn, granting specific performance of a contract of sale of certain real estate in that city and canceling a mortgage on the property owned by Muendelein. The contract is in writing, dated February 26, 1919, and is signed by Louis F. Tissier and appellee. By it Tissier agreed to sell, and appellee to buy, lot 12 in block 2 of C. L. Gray's subdivision of Lincoln place, second subdivision in East St. Louis, for $3700, $700 to be paid on the execution of the contract and the balance in monthly payments of $25, with six per cent interest, payable monthly. The contract provided that when the balance due was reduced to $2500 a deed would be delivered subject to a mortgage for that amount.

In the bill of complaint filed by appellee on December 31, 1930, it is alleged that Louis F. Tissier, being or pretending to be seized and possessed of said lot, entered into the contract of sale; that about the time the contract was executed appellee took possession of the lot and continued thereafter in the possession of it and made valuable improvements thereon; that on or about April 1, 1919, she paid $700, and various other stated sums at different dates thereafter, until in the latter part of September, 1921, she had paid all accrued interest and all of the principal amount of $3700 except $130; that on or about October 1, 1921, she offered

to pay said sum of $130 to Louis F. Tissier on his delivering to her a deed conveying title to the lot; that he refused, and still refuses, to comply with the agreement; that at the time the contract was entered into, and for several years thereafter, Louis F. Tissier, Paul Tissier and Charles A. Tissier, were engaged in the real estate business as co-partners and did business under the name "Tissier Brothers;" that each of the partners acted as the agent of Louis F. in the collection of payments made under the contract; that when the contract was executed Louis F. was not the owner of the lot and had not since that time acquired title thereto; that the record title to the lot was when the contract was executed, and is now, in Charles A.; that on August 8, 1927, Charles A. executed a mortgage on the lot to Louis F., trustee, to secure an indebtedness of $2000, and on August 12, 1927, the mortgage was assigned to appellant Oscar Becherer; that when said mortgage was executed and assigned, Louis F. and Charles A. Tissier and Becherer knew that appellee had made the payments above mentioned on the contract of sale and had requested a deed to the premises. The prayer of the bill is that Louis F. may be decreed specifically to perform the contract, that the mortgage may be declared null and void, and for general relief. Louis F., Paul and Charles A. Tissier and Becherer were made parties defendant to the bill and each filed a separate answer, the contents of which it will be unnecessary to state, except to say that Charles A. set up the Statute of Frauds as a defense. Muendelein filed an intervening petition, an answer to the bill and a cross-bill, in which he alleged that the mortgage on the lot, and the note for $2000 which it secured, had been assigned to him by Becherer, and asked for a decree of foreclosure of the mortgage. Appellee filed an answer to the cross-bill. After replications had been filed the cause was referred to a master in chancery to take the evidence and report his findings and recommendations for a decree. The master filed his report, in which he rec-

ommended that a decree be entered dismissing appellee's bill for want of equity and granting the prayer of the cross-bill for foreclosure of the mortgage. Objections to the report were overruled by the master and were ordered to stand as exceptions before the chancellor. The chancellor sustained the exceptions and entered a decree finding that when the contract of sale was executed, Louis F., Paul and Charles A. Tissier were partners in the real estate business; that title to the premises was held by Charles A. for the use of the partnership; that the sale of the property to appellee was a partnership transaction; that appellee had paid all of the purchase price of the property except $130, and that the mortgage for $2000 was executed and taken by the assignees thereof with notice of appellee's rights in the property and was void as to her. Appellee was ordered to pay to Louis F., Paul and Charles A. Tissier, or either of them, $130, and said payment having been made, Charles A. was ordered to execute and deliver to appellee a deed to the lot, or if he failed or refused so to do, the master in chancery was ordered to make the deed. The mortgage for $2000 was decreed to be void so far as appellee was concerned, and Muendelein's cross-bill was dismissed for want of equity.

In the year 1909 or 1910, and for several years thereafter, Paul, Louis F. and Charles A. Tissier were partners in the real estate business in East St. Louis and did business under the firm name "Tissier Brothers." The testimony for appellants is that Paul ceased to be a partner in said business before the fall of 1917 and went into business for himself under the name "St. Clair Motor Sales Company;" that Charles A. retired from the partnership in the fall of 1917 and entered the United States army, in which he served until July, 1919; that after Charles A. severed his connection with the partnership Louis F. conducted the real estate business individually, and that neither Paul nor Charles A. had any interest of any kind in that business. Evidence for the appellee shows that after

the fall of 1917 the real estate business was conducted by Louis F. in the name of Tissier Brothers, and appellee contends that the three brothers were at the time the contract was executed, and now are, partners in that business and that the property was partnership property. The deed for the lot in question to Charles A. was not introduced in evidence and the date when he acquired title thereto does not appear from the record, but we infer that it was after the partnership was formed. The testimony for appellants is that after title to the property was acquired by Charles A., and before the contract was executed, the house on the lot was built and a mortgage for $2500 on the lot was executed by him to obtain the money with which to build the house; that that mortgage was on the lot when the contract of sale was executed, and that the mortgage of August 8, 1927, now owned by Muendelein, was executed to get money with which to pay off the balance due on the mortgage. There is no denial of any part of this evidence by any evidence for appellee. Other testimony for appellants is to the effect that shortly before Charles A. enlisted in the army he gave Louis F. authority to rent the house and lot, collect the rent and apply it in payment of taxes, repairs and maintenance and in reduction of the mortgage indebtedness, but that he at no time gave him authority, in writing or otherwise, to sell the property; that Charles A. owned the property individually, and that neither Paul nor Louis F. had any interest in it. There is no evidence of any authority given by Charles A. to Louis F. to sell the property. The contract of sale which was executed by Louis F. and appellee in duplicate is partly printed and partly written and is in a pamphlet, on the outside cover of which appears the following: "Mrs. Emma Nehrkorn in account with Tissier Bros., real estate, loans and insurance, Murphy building, East St. Louis, Ill." The contract is on the first two pages in the pamphlet, and following the contract are several blank pages for the notation of payments.

The payments entered in the pamphlet of appellee, and also in the one retained by Louis F., are the same, the last payment noted being of $1500 on August 5, 1919, leaving a balance due of $975. There follows a further notation that interest on $975 was paid to February 5, 1920. No later payments are entered in either pamphlet. There is testimony for appellee of payments made on the contract to Paul and Charles A. which were not entered in either pamphlet. Both of these brothers testified that they received no payments on the contract. Charles A. testified that he never received any of the money paid on the purchase price of the lot by appellee and did not learn of the contract for the sale of the property until June, 1930, when his brother Louis was in financial difficulty. Louis F. failed in business in the summer of 1930 and an indictment for a criminal offense was found against him. On August 7, 1930, Charles A. signed and acknowledged a deed to the lot in question to appellee, subject to the mortgage for $2000 of August 8, 1927. There is no reference in this deed to the contract of sale, and the deed was never delivered to appellee and was not recorded. Charles A. testified that he signed, acknowledged and gave it to his brother Louis for the sole purpose of attempting to help him out of his financial troubles.

The first contention of appellants is that the decree entered is not in accordance with the allegations of the bill, in that there is no allegation in the bill that the property was partnership property. While it is alleged in the bill that when the contract was executed Louis F., Paul and Charles A. Tissier were partners in the real estate business, there is no allegation that the property in question was partnership property. The bill alleges that Louis F. was not the owner of the property when the contract of sale was made and that the record title to the property was in Charles A., but there is no allegation that the latter held title to the property for the benefit of the partnership. It

is well established that a decree granting relief warranted by facts shown by the evidence cannot be sustained unless those facts are alleged in the bill. (*Hooper* v. *Traver,* 336 Ill. 275.) There is merit in this contention of appellants, but even if the bill is sufficient to support the decree, it can not be sustained because of a failure of proof that the property in question was partnership property or that Louis F. was duly authorized to make the contract of sale on behalf of Charles A.

The title to this property was in the name of Charles A. Tissier, and there is no showing that in the deed by which he obtained title there was any declaration that he was to hold the lot as the property of the partnership. The presumption therefore is that the lot was his individual property. (*Alkire* v. *Kahle,* 123 Ill. 496; *Jones* v. *Dugan,* 124 Md. 346, 92 Atl. 775; *Lindsay* v. *Race,* 103 Mich. 28, 61 N. W. 271; *Hayes* v. *Treat,* 178 Pa. 310, 35 Atl. 987; 47 Corpus Juris, 768, 769.) There is absolutely no showing that the lot was purchased with partnership money or for partnership purposes, or that it was entered and carried on the books of the partnership as the property of the partnership, or that there was any contract or understanding between the partners that the lot was the property of the partnership. In the absence of evidence of any one or more of these controlling factors to show that the lot was partnership property, a finding that it was partnership property cannot be sustained. (*Robinson Bank* v. *Miller,* 153 Ill. 244; *Alkire* v. *Kahle, supra.*) It is true that Charles A. stated that during the time he was a member of the partnership he held title to several pieces of real estate belonging to the partnership in his individual name, but he testified that neither Paul nor Louis F. ever had any interest in the lot. It is also true that a witness for appellee testified that she bought some real estate from Louis F. and that Charles A. signed the deed of the property to the witness.

This testimony falls far short of establishing that the lot in question was partnership property. *Robinson Bank* v. *Miller, supra.*

There is no showing that Charles A. Tissier ever authorized Louis F. Tissier, by writing or by parol, to sell the lot in question. There is testimony by appellee and her husband that after the contract was executed Charles A. stated that he would see that appellee got a deed to the property. But this is denied by him. The Statute of Frauds is relied upon by him as a defense, and if the evidence of appellee and her husband be taken as true, it does not show such a ratification of the contract as to make it binding on him, because where the law requires authority to make a contract to be in writing the ratification of it must also be in writing. (*Bruns* v. *Huseman,* 266 Ill. 212.) It is also true that the deed signed and acknowledged by Charles A., which was not delivered or recorded and which contained no reference to the contract, is no evidence in writing of a contract for the sale of the lot binding on appellants. *Volmut* v. *Bern,* 346 Ill. 619.

It follows from what has been said that the court erred in decreeing specific performance by Charles A. Tissier of the contract of sale, because he was not a party to that contract and was not bound by it. Appellee failed to show that she had any rights in the property as vendee as against the owner of the property, Charles A. The evidence shows that the money obtained by the loan secured by the mortgage for $2000 of August 8, 1927, was used to satisfy and have released a mortgage which was on the lot at the time the contract of sale was executed. Evidence for appellants which is denied by appellee tends to show that she consented to the mortgage for $2000 being put on the lot. The evidence failed to show that she was in anywise defrauded or damaged by that mortgage being executed, and the court therefore erred in holding it void and in refusing foreclosure thereof.

The decree of the city court is reversed and the cause remanded, with directions to enter a decree dismissing appellee's bill for want of equity and to decree foreclosure of the mortgage owned by Muendelein, as prayed in the cross-bill. *Reversed and remanded, with directions.*